This action is set for a status hearing at 9 a.m. September 26, 1988 to deal with all these matters.

Juanita **SKIPPER**, et al., Plaintiffs,

v.

Edward T. **DUFFY**, et al., Defendants.

No. 84 C 7738.

United States District Court,
N.D. Illinois, E.D.

Dec. 20, 1988.

Heidi Noun, Joseph A. Antolin, William Kolen, Mary Elizabeth Kopko, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.

Owen M. Field, Karen Konieczny, James C. O'Connell, Office of Illinois Atty. Gen., Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is plaintiffs' motion for summary judgment. *See* Fed.R.Civ.P. 56(a). On June 28, 1988, Magistrate Weisberg issued his Report and Recommendation on that motion. The Magistrate recommended that:

1.  IDPA [Illinois Department of Public Aid] should be ordered to issue replacement food stamps to the named plaintiffs for the food stamp allotments denied to them and to members of the plaintiff class who have been denied replacement food stamps in similar circumstances.

2.  Declaratory and injunctive relief should be granted against application by IDPA of its inventory discrepancy

rule to food stamp recipients who receive food stamps by direct delivery or diverted delivery.

3. The following claims should be dismissed because the named plaintiffs lack standing,

a. Plaintiffs' claims for injunctive or declaratory relief concerning the two replacement request rule.

b. Plaintiffs' claim regarding IDPA's alleged failure to issue replacement coupons no more than 10 days after receiving a report of non-delivery.

c. Plaintiffs' claims challenging IDPA's methods for determining inventory discrepancies.

d. Plaintiffs' claims attacking IDPA's failure to switch recipients to other issuance systems after two reports of nondelivery by mail in a six month period.

e. Plaintiffs' claims attacking IDPA's unwritten policies and procedures relating to IDPA's inventory discrepancy rule.

f. Plaintiffs' claims challenging IDPA's appeal procedures or alleged failure to provide appeals for partial allotment replacement denials.

Magistrate Weisberg's Report and Recommendation is appended to this Order as Appendix A.

Defendants have filed objections to the Magistrate's report challenging the first two recommendations listed above. Plaintiffs have filed objections challenging subparts a, b, c, and e of the Magistrate's third recommendation. Plaintiffs also have filed a response to defendants' objections. Because plaintiffs have not objected to 3d and 3f as listed above, the court adopts the Magistrate's Report and Recommendation on these issues and finds that plaintiffs do not have standing to assert these claims.

The court also finds that federal law does not allow the application of the Two Replacement Request and Inventory Discrepancy Rules ("Rules") to non-mail issuance systems. Regardless of defendants' contentions, Illinois has three distinct delivery systems, only one of which is a true direct mail system under federal law.

*See* 7 C.F.R. § 274.3 (one in which the food stamp coupons or the authorizing documents used to pick up the coupons are sent directly to the recipient households). Therefore, the Rules cannot be applied to Illinois' direct delivery or diverted delivery systems, and the court adopts the Magistrate's analysis regarding these issues.

As to plaintiffs' claims for injunctive and declaratory relief concerning the Two Replacement Request Rule, the court notes that in a class action, the named members of the class must have an actual case or controversy with the defendant(s) in order to have standing to assert the disputed claims. *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). The Magistrate premised his conclusion of plaintiffs' lack of standing on this issue on the fact that since April, 1984 (before this action was filed) Cook County was changed to a direct delivery system which did not include the use of the mail system in any manner. Since all the named plaintiffs reside in Cook County, the Magistrate determined that they cannot challenge by way of injunctive relief the application of the Two Replacement Request Rule. The Magistrate erred, however, by not considering that certain households in Cook County may nevertheless receive their regular allotments and replacements by mail if the head of the household is incapacitated or otherwise unable to pick them up at the currency exchange. The named plaintiff, Juanita Skipper, is classified in this manner, thus subjecting her household to the application of the Two Replacement Request Rule. Moreover, it is not clear from the evidence submitted whether defendants have actually ceased applying the Two Replacement Request Rule to direct delivery systems. Thus, the court is unwilling, as the Magistrate recommends, to dismiss the injunctive relief claim on this issue. To the extent that defendants continue to apply the Two Replacement Request Rule to their direct delivery or diverted delivery systems a permanent injunction shall issue prohibiting this activity because it violates federal law.

■ With regard to injunctive relief pertaining to the requirement that replacement coupons be issued no more than 10 days after receiving a report of non-delivery, the court notes that a delay in receiving food stamps is a cognizable injury and that even a belated receipt of food stamps cannot be viewed as a full remedy. *Haskins v. Stanton*, 794 F.2d 1273, 1276–77 (7th Cir.1986); *Smith v. Miller*, 665 F.2d 172, 177 (7th Cir.1981); *Quinones v. Coler*, 651 F.Supp. 1028, 1032 (N.D.Ill.1987). Here, several of the named plaintiffs have established that they failed to receive their replacement food stamps in a timely manner. Few things are more important to a poor person than the timely receipt of the means by which he purchases food and other necessaries. Accordingly, contrary to the Magistrate's conclusion, plaintiffs do have standing to seek injunctive relief against defendants to prevent any future delays in the issuance of replacement coupons in contravention to 7 C.F.R. § 274.3(c).

■ Finally, the Magistrate found that plaintiffs do not have standing to challenge the Inventory Discrepancy Rule because the named plaintiffs Gardner and Harris were denied replacements while under a direct delivery system, not a mail delivery system. The Magistrate's distinction is without merit. The fact that the discrepancy rule was applied erroneously to Gardner and Harris is of no consequence. The rule was applied to them and they were injured as a result thereof (i.e. delayed in receiving and eventually denied replacement food stamps). By this Order the court enjoins application of the inventory discrepancy procedures to the direct delivery system (the system under which Gardner and Harris receive stamps); however, the court finds plaintiffs have standing to challenge the procedures not only by asserting a damages claim but by seeking injunctive relief as well. Plaintiffs as a class should not be precluded from seeking injunctive relief to correct procedures which injured the named plaintiffs simply because the court determines as a matter of law that the procedures cannot apply to the named plaintiffs; there are unnamed plaintiffs who will continue to be detrimentally affected by the application of these procedures (i.e. in mail delivery areas) in the same manner as the named plaintiffs were. Moreover, the named plaintiffs must be afforded a procedure themselves under which they are assured of receiving the correct number of coupons when they pick them up personally at the currency exchanges. While the specific procedures in a direct delivery system may vary from the procedures applied in a mail delivery system, plaintiffs as a whole and as a class have a continuing interest in ensuring that the Illinois system comports with federal law (i.e. that the system provides them the correct number of coupons).

Addressing the substance of these inventory discrepancy procedures, when a recipient picks up his or her coupons directly from a currency exchange or an IDPA office (direct delivery or diverted delivery) some verification of the correct number of coupons should be made at the time the coupons are received by the recipient. The burden cannot fall on the recipient to prove that he or she received the incorrect number of coupons when a simple verification procedure could be implemented to correct the problem. Moreover, in the present mail delivery system, the evidence demonstrates that the Inventory Discrepancy Rule violates federal law in the following manners: 1) the procedures fail to implement the dual accountability verification requirements, *see* 7 C.F.R. § 274.3(b), to ensure that each household's addressed envelope contains the correct number of coupons; 2) the IDPA's reconciliation reports do not accurately account for households which receive underissuances because under present inventory procedures underissuances are offset by overissuances; and 3) the unwritten policies and procedures relating to IDPA's Inventory Discrepancy Rule violate due process because of the discretionary manner in which the rule is applied and by the inconsistent case-by-case determinations made. With regard to the second violation, a household which receives an underissuance may not receive replacement coupons because another household re-

ceived additional coupons to which it was not entitled. It is not enough to say it all averages out in the long run. The IDPA cannot transfer the liability for its own errors to the households entitled to receive correct numbers of coupons. *See* 7 U.S.C. § 2025; 7 C.F.R. §§ 271.2, 273.17, 274.-3(c)(4).

In sum, the court adopts the recommendations of Magistrate Weisberg which are enumerated 1, 2, 3d, and 3f. The court rejects recommendations 3a, 3b, 3c and 3e. Accordingly, the court orders and enters judgment as follows:

1) the IDPA is ordered to issue replacement food stamps to the named plaintiffs for the food stamp allotments denied them and to members of the plaintiff class who have been denied replacement food stamps under similar circumstances;

2) the IDPA is enjoined from applying its Inventory Discrepancy Rule and Two Replacement Request Rule to its direct delivery or diverted delivery systems because this practice violates federal law;

3) the IDPA is ordered to comply with federal law imposing a 10–day limit in issuing replacement coupons; and

4) the IDPA's methods for determining inventory discrepancies and its unwritten policies and procedures relating to the Inventory Discrepancy Rule violate federal statutory law and the Due Process Clause respectively; the IDPA is enjoined from continuing these practices; however, the issuance of the injunction is stayed pending the promulgation and adoption of acceptable alternative procedures; the IDPA is ordered to continue the present procedures pending resolution of these matters, and the attorneys of record shall appear in chambers on January 13, 1988 at 11:30 a.m. to discuss these issues.

IT IS SO ORDERED.

---

\* Under Fed.R.Civ.Proc. 25(d) Michael Taylor, Acting Director of IDPA, was automatically sub-

## APPENDIX A

JUANITA SKIPPER, et al., Plaintiffs,

v.

MICHAEL TAYLOR, et al., Defendants.

### REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Juanita Skipper, Gloria Anderson, Notheria Tatum, LeeVora Gardner and Kenneth Harris filed this class action on September 17, 1984 against defendants Gregory L. Coler, Director of the Illinois Department of Public Aid (IDPA) \* and Timothy A. Grace, Director of the Illinois Food Stamp Program. Plaintiffs allege that they and other food stamp recipients have been deprived of replacement food stamps by the defendants in violation of the Food Stamp Act of 1964, as amended, 7 U.S.C.A. §§ 2011 *et seq.* (the Act), applicable federal regulations and the due process clause of the Fourteenth Amendment. Plaintiffs sue under 42 U.S.C.A. § 1983. The court has jurisdiction under 28 U.S.C.A. §§ 1331, 1337 and 2201. Plaintiffs request declaratory and injunctive relief and restoration of food stamp benefits they lost as a result of application of defendants' challenged policies.

By order dated August 12, 1985 Judge Norgle certified a class of plaintiffs defined as follows:

All persons who (a) have been, are being, or will be determined eligible for food stamps by the Illinois Department of Public Aid ("IDPA"); and (b) have reported, are reporting, or will report to IDPA the non-receipt or partial receipt of food stamps; and (c) since January 1, 1983 have been, are being, or will be denied by IDPA, food stamps to replace those stamps not received.

Plaintiffs have moved for summary judgment. Defendants agree that there are no factual issues requiring trial.

---

\* stituted for defendant Gregory L. Coler.

*Background*

The Act authorizes a food stamp program to "permit low-income households to obtain a more nutritious diet through normal channels of trade ..." 7 U.S.C.A. § 2011. Eligible households are to be issued allotments of food stamps which can be used like cash to purchase food items at retail food outlets. *Id.* §§ 2013(a), 2014(a) and 2016(b).

The United States Department of Agriculture (USDA) administers the National Food Stamp Program. The Secretary of Agriculture is authorized to promulgate regulations consistent with the Act that are necessary and appropriate for the effective administration of the food stamp program. § 2013(c).

State agencies administer and operate the food stamp program within the various states. Section 2020(a); 7 C.F.R. § 271.4 (1987).[1] Each state agency shall administer the food stamp program in accordance with the Act and the implementing regulations, 7 U.S.C.A. § 2020; 7 C.F.R. § 272.2. IDPA is responsible for administering the food stamp program in Illinois and for the timely and accurate issuance of food stamps to eligible households each month. Pl.St. ¶ 16 [2] 7 C.F.R. § 274.1(a).

A state agency must select one or more systems for issuing food stamp coupons to eligible families. 7 C.F.R. § 274.2(a). The regulations provide for four issuance systems:

1. Household issuance record card (HIR) systems in which the authorizing document is maintained at the issuance office. In this system the recipient shows proper identification to an employee or agent of the State agency, 7 C.F.R. § 274.1(b), and the allotment of food stamps is issued directly to the recipient. 7 C.F.R. § 274.2(a), (d) and (f).

2. Authorization to participate (ATP) systems in which an authorizing document is distributed to the household on a monthly basis and surrendered to the issuer when the food stamps are obtained. In an ATP system, as in HIR systems, stamps are issued directly to the recipient. 7 C.F.R. § 274.2(a) and (e).

3. Mail issuance systems in which an authorizing document or food stamp coupons are mailed to recipient households. 7 C.F.R. §§ 274.2(a), 274.3.

4. A state agency may develop an "automated issuance system, such as one using online issuance terminals, which cannot be readily categorized as either an HIR card or ATP system. Such alternative or modified systems shall meet the accountability requirements established in these regulations." 7 C.F.R. § 274.2(a).

Upon receiving a request from a household the state agency shall provide for the prompt restoration of food stamps of any allotment or portion thereof which has been wrongfully denied or terminated. 7 U.S.C.A. § 2020(e)(11). This provision applies to all issuance systems.

The rules applicable to mail issuance systems provide that when a household reports the non-delivery of an allotment or partial allotment of coupons issued through the mail, the state agency shall determine if the coupons were validly issued, actually mailed, and if sufficient time has elapsed for delivery. 7 C.F.R. § 274.3(c)(1)(i). The agency shall provide replacement coupons no more than 10 days after the report of non-delivery has been received. *Id.* § 274.3(c)(1)(iv). However, replacements shall only be issued if the coupons are reported lost or stolen in the mail in the period of their intended use and the household requesting replacement has not al-

---

1. All references to C.F.R. are to the 1987 edition of the Code of Federal Regulations.

2. The following abbreviations will be used.
   Pl.St.—Plaintiffs' Statement of Uncontested Material Facts.

Def.Exc.—Defendants' Exceptions to Plaintiffs' Statement of Uncontested Material Facts.
Pl.Ex.—Exhibits in Plaintiffs' Appendix In Support of Its Motion For Summary Judgment.
Def.Ex.—Defendants' Exhibits.

ready been issued two replacements in the previous five months. *Id.* § 274.3(c)(1).

After a household has made two reports "of nondelivery of either full or partial allotments in a 6–month period, the State agency shall utilize other issuance methods for that household. These may be reports of nondelivery of an original or a replacement allotment ... If the state agency finds that the circumstances leading to the loss have changed and the risk of loss has lessened" the household may be returned to the "regular issuance system." *Id.* § 274.3(c)(3).

If the household reports delivery of a partial allotment the agency shall determine the value of the coupons not delivered and that the report of non-delivery is corroborated by evidence that the coupon loss was due to damage in the mail before delivery or a discrepancy in the issuance unit's inventory. If the receipt of a partial allotment is due to an error in the issuing unit, the remainder of the allotment shall be issued regardless of the number of times the household has received replacements in the past five months. *Id.* § 274.3(c)(1)(i).

In areas with $300,000 or more of mail issuance in a quarter the USDA assumed full financial liability after 1983 for coupons lost in the mail up to an additional .05 percent of quarterly mail issuances. *Id.* § 274.3(c)(4)(i). There is a substantial incentive, therefore, for a state agency to classify its issuance system as a mail issuance system.

*IDPA's Issuance Systems*

IDPA issues approximately $56,000,000 in food stamps per month to approximately 433,000 households in Illinois. Pl.Ex. C at 29. IDPA packages allotments by mechanical inserters which count the coupons, stuff them in envelopes and seal the envelopes. First Admissions, No. 52 (Pl.Ex. A). All of the prepackaging is done by the Direct Mail Issuance Center (DMIC) a division of IDPA located in Springfield. Pl.St. ¶¶ 23, 24. IDPA has three different modes of delivery all of which it classifies as a single mail issuance system. Pl.St. ¶ 26, Def.Exc. 26.

### 1. Direct Delivery

Approximately two-thirds of the food stamps issued in Illinois are distributed by direct delivery, a system which is used in 18 of Illinois' 102 counties. A direct delivery agent, usually a currency exchange, is designated as the site where the household will receive the sealed food stamp envelope. The direct delivery agent acts as IDPA's agent for distributing the food stamp coupons. Since January 1, 1983 the IDPA transports the sealed envelopes from the DMIC to the currency exchanges. The direct delivery agent receives a sealed envelope for each household. Pl.St. ¶ 33. The head of the recipient household must show proper identification to the direct delivery agent and sign a card acknowledging receipt before the direct delivery agent gives the sealed envelope to the recipient. IDPA prohibits the direct delivery agent from verifying that the sealed envelope contains a correct allotment. The direct delivery agent is prohibited from sending food stamps to recipient households through the mail. In the direct delivery system the food stamps are never deposited in the mail at any stage of the process. Pl.St. ¶¶ 29–37. Def.Exc. ¶ 30.

### 2. Direct Mail

Approximately 26% of Illinois food stamp recipients receive their allotments directly through the mail to their homes. Pl.St. ¶ 27. Since January 1, 1983, IDPA issues those stamps by placing an envelope containing the allotment in the U.S. mails to be delivered to the household's residence or mailing address. Response to Request to Admit. No. 27 (Pl.Ex. A).

### 3. Diverted Delivery

The household's allotment is packaged at the DMIC. The envelopes are transported by the DMIC to IDPA local offices which distribute them to recipients. In a direct delivery county the DMIC transports the envelopes by armored car. In other counties the DMIC mails the envelopes to the local offices. The DMIC generally sends the envelopes via first class mail but will use registered mail to send envelopes to

those local offices that report excessive loss during delivery from DMIC. The head of the household, or an authorized representative, is required to open the envelope and count the coupons in the presence of the IDPA employee to verify that the full allotment was issued. Pl.St. ¶¶ 42–45.

*IDPA's Two Replacement Request Rule*

If a household does not receive the allotment to which it is entitled, it must report the non-receipt to its caseworker at the local IDPA office and request a replacement allotment. Pl.St. ¶ 120. The head of the household, or a proxy, must sign form DPA 2617 stating that the recipient is requesting a replacement issuance for food stamps which were not received and agreeing to return the original issuance if it is received or recovered. Pl.St. ¶ 121, Def. Exc. ¶ 121. The caseworker then completes and submits Form T–130 (which was replaced by Form DPA 552 as of November 18, 1985) to the financial unit of the local office which enters the request into IDPA's computer system thereby "authorizing" replacement of the food stamps. Pl.St. 121, Def. Exc. ¶ 121.

IDPA does not issue replacement stamps to every household that reports non-receipt. Pl.St. ¶ 123. IDPA policy limits the number of replacement allotments it will authorize to two in six months. Pl.St. ¶¶ 124, 125. The Illinois Food Stamp Manual § PO–1415.1 does not limit this replacement rule to any particular delivery system. Exs. L, M. The IDPA computer will reject a third replacement request if the prior two replacements were authorized by "Type Action Reason 15, Coupons Lost/Stolen In Mail." Pl.St. ¶ 126, Def. Exc. ¶ 126. In this situation the household cannot receive a replacement of an allotment that it did not receive regardless of the reason for non-receipt, unless the original allotment has been returned to the IDPA. Pl.St. ¶ 126.

When the caseworker authorizes a replacement allotment that does not mean that IDPA issued the allotment or that the household received the replacement allotment. If a household does not receive an authorized replacement it must request an-

other replacement which constitutes a second request under IDPA policy unless the first authorized replacement allotment was returned to the DMIC. Pl.St. ¶¶ 127–28, Def.Exc. ¶ 128.

IDPA written policy requires that if a household which normally receives its allotment through direct mail reports non-receipt of an allotment, the household shall be switched to diverted delivery or direct delivery issuance for three months. IDPA does not follow that policy. Whether or not the household is switched to another delivery system after the first report of non-receipt, a third report of non-receipt in a six month period will be rejected by IDPA's computer, regardless of the reason for non-receipt, unless one of the authorized replacement allotments was returned to the DMIC. Pl.St. ¶¶ 129–131.

Since April 1, 1984 replacement allotments in the 17 counties which have direct delivery systems (including Cook County in which all of the named plaintiffs reside) are carried out by "Mercury" issuances, all of which are coded for direct delivery. Complaint Exhibit A. The two replacement request rule is not applied to IDPA's direct delivery system since replacement requests for coupons issued in that system are coded differently from requests for lost or stolen coupons issued by mail and, therefore, are not rejected by IDPA's computer. Grace Dep.Pt. I at 108–111.

*IDPA's Inventory Discrepancy Rule*

When a household receives an underissuance it must submit a written request for replacement of the partial allotment. Pl.St. ¶ 132. All of IDPA's published written policies on replacement of partial allotments are contained in Food Stamp Manual §§ PO and PR 1415.3 (1986) (Ex. N) and 1984 (Ex. O).

IDPA policy requires that a household request replacement of a partial allotment on DPA Form 2543 which states, among other things, the number of coupon booklets the household should have received, the number it actually received, the type of issuance system used, whether the envelope was unsealed or damaged and

whether there were any witnesses to the opening of the envelope. Pl.St. ¶¶ 134–35.

IDPA generally does not replace a partial allotment unless there is a documented discrepancy in DMIC's inventory records (the "inventory discrepancy rule") or there is evidence of loss due to damage in the mail before delivery. Pl.St. ¶ 136. This is true even if an IDPA agent witnesses receipt of a partial allotment. Pl.St. ¶ 137.

*Replacement Of Partial Allotments Between January 1, 1983 and March 10, 1986*

From January 1, 1983 to March 10, 1986 the local IDPA office submitted DPA 2543 to the DMIC where either Arthur Blair, the DMIC Supervisor, or Kent Lemme decided whether to grant the partial allotment request. DMIC had no written procedures for handling partial allotment replacement requests and Blair had his own unwritten guidelines as to how to handle such requests. Pl.St. ¶¶ 138–40.

From January 1, 1983 until November 1985 reconciliation reports were the only regular inventory record Blair used to determine whether to grant or deny a request for replacement of a partial allotment. From January 1, 1983 until at least March 10, 1986 Lemme used monthly inventory FNS 250 to decide partial allotment requests. Pl.St. ¶ 141.

From January 1, 1983 until March 10, 1986 the usual procedure was to check the reconciliation report for a particular schedule to see if it documented an underissuance of the particular denomination of coupons requested. If the relevant reconciliation report indicated an underissuance of food stamps of a particular booklet denomination, DMIC would grant replacement requests for that denomination only up to the amount of underissuance recorded in the reconciliation report. Pl.St. ¶¶ 142, 144.

If the DMIC received requests to replace more coupons of a particular denomination than the reconciliation report documented were underissued, DMIC would grant the requests on a first come first served basis based on the date the forms were received by DMIC, regardless of when a household reported the non-receipt. Caseworkers in local offices were never informed that requests were granted in this way. The first come, first served rule did not apply if the IDPA caseworker verified on DPA 2543 that the household had received an underissuance. Pl.St. ¶¶ 145–46.

From January 1983 until at least November 1985 requests for replacement of a partial allotment might be granted even if the reconciliation reports did not show a discrepancy if 1) according to Blair's "mental notes" a food stamp inserter was having problems 2) particular employees who in Blair's opinion may have caused underissuances were operating the inserter, 3) in Blair's opinion IDPA was experiencing problems with a direct delivery agent or 4) an IDPA caseworker verified the underissuance and brought the problem to Grace's attention. Pl.St. ¶ 147.

Under other circumstances Blair would deny replacement requests even if the reconciliation reports documented an underissuance. This occurred when 1) DMIC had hand stuffed and verified an entire schedule 2) the household's allotment exceeded three hundred dollars and therefore was hand stuffed and verified by a clerk or 3) the household reported receipt of denominations it was not authorized to receive and Blair considered the request to be "ridiculous." Pl.St. 148.

*Partial Allotment Replacements Since March 10, 1986*

Since March 10, 1986 the Bureau of Food Stamps (BFS), not DMIC, has handled replacement requests for a partial allotment. The only written guidelines used since March 10, 1986 are in a two page document prepared by Timothy Grace. These guidelines are not in the Food Stamp Manual or the Illinois Register. IDPA caseworkers do not know that the guidelines exist. Under these guidelines a clerk typist determines who is to receive replacements of a partial allotment. Pl.St. ¶¶ 149–51.

The recipient must sign the DPA 2543 and it must be dated within 30 days of the date the allotment was to have been received by the household, although Grace

has used his discretion to grant requests which were signed and dated more than thirty days after the initial issuance of food stamps. Pl.St. ¶¶ 153–54.

DMIC prepares a "schedule balance sheet" for each schedule based on the reconciliation report for that schedule. Grace receives the schedule balance sheets from DMIC every one to one and one-half weeks. These balance sheets list by denomination, whether there are any discrepancies in IDPA's inventory which are documented by the reconciliation reports. BFS relies solely on schedule balance sheets in making decisions regarding replacement. PL.St. ¶¶ 155–56.

A replacement request is granted if the schedule balance sheet lists an underissuance for the requested denomination. After a request is granted the clerk-typist changes the numbers on the balance sheet to reflect that decision. Pl.St. ¶ 156.

Grace uses his administrative discretion to grant replacement of partial allotment requests even when there is no discrepancy in the inventory where: 1) an IDPA caseworker witnessed and verified an underissuance, 2) the DPA 2543 had been sent from BFS to the local office for more information and there were no longer any coupons of that denomination when it was returned to BFS or 3) the envelope was unsealed when received by the household. Pl.St. ¶ 160. BFS grants replacement requests for partial allotments if the household receives a damaged envelope, subject to the two replacement request rule. Pl.St. ¶¶ 161–62.

*Facts Relating To The Named Plaintiffs*

The Skipper household received its monthly food stamp allotment by direct mail. Juanita Skipper, the head of the household, is confined to a wheelchair so IDPA mailed the allotment from Springfield to the Skipper home in Chicago. In September 1983 the Skipper household did not receive its monthly allotment. Juanita Skipper reported the non-receipt of stamps to her caseworker at the local IDPA office. IDPA told Juanita Skipper to pick up the replacement coupons at the local office. The local office told Ms. Skipper that the replacement allotment never arrived and they requested another replacement on her behalf. That replacement never arrived at the local office. IDPA then refused to provide a replacement allotment for September 1983 based on its two replacement request rule. Pl.St. ¶ 3. Defendants say that Springfield mailed two replacement allotments to the local IDPA office which were lost or stolen and no other replacement was allotted because two such replacements were lost in the mails.

The Tatum household received a monthly allotment by direct mail. In July 1983 Ms. Tatum was to receive $73 in coupons for May 1983 and $276 for June 1983 coupons. The May and June allotments did not arrive and Ms. Tatum requested replacements which were to be issued to Ms. Tatum at the local office. The replacement allotment for May never arrived at the local office. Ms. Tatum made a second request and she received the May allotment in October. The replacement allotment for June, 1983 was issued but in the partial amount of $73 not $276 and a request was made to replace the remainder of the June allotment. This replacement never arrived at the local office. The local office again requested a replacement but IDPA refused based on the two replacement request rule. Pl.St. ¶ 5.

The Anderson household received a monthly allotment by direct delivery. Each month Ms. Anderson went to a currency exchange to pick up the household's coupons. In October 1983 the Andersons did not receive their allotment due to an error made by a local office caseworker. IDPA informed Ms. Anderson that she was entitled to a replacement allotment which would be sent to the local office. This replacement allotment never arrived at the local office. Ms. Anderson requested replacement of the October allotment on October 19, 1983. The local office informed Ms. Anderson that this replacement allotment had never arrived. On November 17, 1983 IDPA informed Ms. Anderson by letter that the October allotment was being mailed to her home. Ms. Anderson never received the coupons and IDPA refused to

replace them based on the two replacement request rule. Pl.St. 7.

Kenneth Harris received his monthly allotment by direct delivery. Each month Mr. Harris picked up a sealed envelope containing his coupons at a currency exchange. His monthly allotment comprised one $65 coupon book, one $7 coupon book, and two $2 coupon books. On May 11, 1984 Mr. Harris picked up his allotment at the currency exchange and while still at the currency exchange he opened the envelope and discovered that the $65 coupon book was missing. Mr. Harris then went to his local office to report the missing stamps and to request a replacement. IDPA denied Mr. Harris' request based on the inventory discrepancy rule. Pl.St. ¶ 9.

The Gardner household received a monthly allotment by direct delivery. Each month Ms. Gardner, the head of the household, would go to a currency exchange to pick up a sealed envelope containing the food stamps. She was entitled to receive two $65 food stamp coupon books, one $40 coupon book, one $7 coupon book and three $2 coupon books for a total of $183. In February 1984 Ms. Gardner picked up her envelope at the currency exchange and went directly to a grocery store. At the checkout counter Ms. Gardner opened the sealed envelope and found only $53 in food stamp coupons—the two $65 coupon books were missing. Ms. Gardner went to the local IDPA office to report the missing stamps and to request a replacement allotment. The local office discouraged her from making a formal request because they told her she would never receive a replacement. Ms. Gardner returned to the IDPA office and insisted on making a replacement request. IDPA denied Ms. Gardner's request based on the inventory discrepancy rule. Pl.St. ¶ 11.

*Issues*

Plaintiffs claim that defendants violate the Food Stamp Act and the applicable regulations by:

—Applying the two replacement and inventory discrepancy rules to non-mail issuance systems.

—Denying replacement allotments where there have been two "requests" rather than two "issuances", whether or not the household has received replacement allotments.

—Failing to use other issuance methods for a household which has made two reports of non-delivery of full or partial allotments issued by mail in a six-month period.

—Improper methods of determining whether there are inventory discrepancies.

—Failing to replace allotments within ten days.

Plaintiffs also claim that IDPA's unwritten replacement policies and procedures violate Due Process and that IDPA fails to provide a fair or meaningful hearing to households which claim a wrongful denial of food stamps based on the two replacement request rule or the inventory discrepancy rule.

1. Standing

Defendants raise a threshold challenge to plaintiffs' standing. They say that no named plaintiff has proved that either the two replacement request rule or the inventory discrepancy rule was applied to him or her in a unlawful manner and that the circumstances which gave rise to the application of the two replacement rule to the Skipper, Anderson and Tatum households no longer occur. They point to the following facts.

Since April 1, 1984, in all counties which have a direct delivery system, including Cook County, whenever a special authorization is required, such as a replacement request, the allotments have been delivered to currency exchanges via armored car. They are not mailed to currency exchanges as was done previously. Ex. A. to the Complaint. IDPA Food Stamp Chief Timothy Grace testified that the two replacement request rule "technically" applies to the Direct Delivery System, but he does not know that it has ever been applied. Grace dep. Pt. I at 107–08. If an authorized household claims that it did not receive its allotment and the currency ex-

change says it did, the signature card is examined. If it is determined that the allotment was given to the wrong household the currency exchange is charged for the loss and the authorized household gets a replacement. *Id.* at 109. The request for a replacement in this situation is never subject to the two replacement request rule. *Id.* at 110. The computer which processes these transactions is programmed to apply the two replacement requests rule only in a "type action reason 15" which relates to the replacement of lost or stolen coupons. A replacement through a currency exchange in the circumstances discussed above is a "type action reason 10", to which the computer does not apply the two replacement request rule. *Id.* at 110–11, 115–16. (Grace said originally it was "11" but later that the correct number is "10").

The only named plaintiffs who challenge the two replacement request rule are Skipper, Anderson and Tatum, all of whom reside in Cook County. Pl.St. ¶¶ 2, 4, 6. They each claim wrongful denial of food stamp allotments in 1983. Under the issuance system then in effect replacement allotments were mailed from Springfield to a currency exchange or IDPA office in Cook County. Under the system in effect since April 1, 1984 replacement allotments are sent from Springfield in armored cars to currency exchanges in Cook County and other direct delivery counties. The mails are no longer used. The upshot is that the two replacement request rule is not currently applied to replacement requests from households in Cook County.

Defendants argue from these facts that plaintiffs have not proved that they have been personally injured by the IDPA rules and policies they seek to attack, citing *Warth v. Seldin,* 422 U.S. 490, 505–07 [95 S.Ct. 2197, 2208–09, 45 L.Ed.2d 343] (1975) and *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38–39 [96 S.Ct. 1917, 1924–25, 48 L.Ed.2d 450] (1976).

Defendants' argument simply ignores the fact that the Skipper, Anderson and Tatum plaintiffs have each been denied food stamps because of the two replace-ment request rule. Therefore they have undeniably been injured by application of that rule and have standing to seek relief in the form of replacement stamps or damages to redress that injury for themselves and other members of the plaintiff class who have suffered similar injury. Complaint, Prayer For Relief ¶ C; *Quinones v. Coler,* 651 F.Supp. 1028, 1031–32. (N.D.Ill. 1987) (Shadur, J.).

Although these plaintiffs have standing to seek damages, they do not have standing to seek injunctive or declaratory relief as to the two replacement request rule because they are no longer threatened with any injury caused by the application of that rule. *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 [103 S.Ct. 1660, 1664, 75 L.Ed. 2d 675] (1983).

> In a class-action situation, such a case or controversy must exist between a named class representative and defendants to permit that named plaintiff to seek relief on behalf of himself or herself and the other members of the class, *O'Shea v. Littleton,* 414 U.S. 488, 494 [94 S.Ct. 669, 675, 38 L.Ed.2d 674] (1974). Because plaintiffs here are seeking injunctive relief rather than damages for prior wrongs, mere past exposure to illegal activity is not enough to create a case or controversy. Plaintiffs must show a sufficiently real and immediate threat of future harm to satisfy Article III. (*Id.* at 495–96), [94 S.Ct. at 675–76].

*Quinones v. Coler,* 651 F.Supp. at 1031 (parallel citations omitted).

Nor can the named plaintiffs come within the exception in class actions where a named plaintiff's claim becomes moot but he may continue to act as a class representative. *Foster v. Center TP of La Porte County,* 798 F.2d 237, 245 (7th Cir.1986). The named plaintiffs here never had standing to seek injunctive or declaratory relief against the two replacement request rule because IDPA changed its issuance system in Cook County before plaintiffs filed suit.

Plaintiffs acknowledge that they must show a continuing violation of federal law. *Watkins v. Blinzinger,* 789 F.2d 474, 484 (7th Cir.1986). Pl. Reply Brief 8 n *. They

argue that IDPA's policies and practices in all essential respects have remained unchanged, citing pages from the 1986 and 1984 editions of IDPA's Food Stamp Manual, each of which limits replacements of food stamps issued by direct mail to two in a six month period. Ex. L and M. But nothing in those rules is inconsistent with the fact that since April 1, 1984 the two replacement request rule has not been applied to food stamp recipients in Cook County.

Plaintiffs next argue that even if IDPA has changed some of its policies and practices, plaintiffs would still be entitled to declaratory and injunctive relief on the authority of such cases as *County of Los Angeles v. Davis*, 440 U.S. 625, 631 [99 S.Ct. 1379, 1383, 59 L.Ed.2d 642] (1979) (voluntary cessation of allegedly illegal conduct does not make a case moot if the defendant can not show there is no reasonable expectation that the wrong will be repeated). But here the change in IDPA practice was effective several months before suit was filed. Plaintiffs also argue that the case relating to the two replacement request rule is not moot because the April 1, 1984 change relied on by IDPA applies only in direct delivery counties and not in the counties where direct delivery is not available. But the Skipper, Anderson and Tatum households, the named plaintiffs who complain that they were injured by application of that rule, live in Cook County which is a direct delivery county and do not have standing to seek injunctive relief for recipients in counties without direct delivery.

Defendants also contend that the plaintiffs lack standing to challenge the IDPA's inventory discrepancy rule, but defendants fail to support that statement with any facts or analysis. There is nothing to indicate that IDPA has modified its policies and practices relating to the inventory discrepancy rule. The Harris and Gardner plaintiffs were injured when they were denied replacement stamps because of the inventory discrepancy rule. Those plaintiffs have standing to challenge the validity and application of that rule and to seek declaratory and injunctive relief against that rule as well as replacement food stamps for those wrongfully denied.

Standing questions with regard to plaintiffs' attack on defendants' failure to replace allotments within ten days, methods of determining inventory discrepancies, failure to switch recipients to other issuance systems and due process claims will be addressed later in this report.

2. Application Of The Two Replacement Request And Inventory Discrepancy Rules To Non–Mail Issuance Systems

The parties agree that USDA regulations limit application of the two replacement request and inventory discrepancy rules to a mail issuance system. The parties also agree that IDPA has three methods by which food stamps ultimately find their way into the hands of eligible households, direct delivery, direct mail and diverted delivery. Plaintiffs contend that the direct delivery and diverted delivery are not mail issuance systems and that IDPA violates the Food Stamp Act by applying the two replacement request and inventory discrepancy rules to these systems. Defendants argue that these three methods of delivery are but three components of one mail issuance system. Defendants' arguments are untenable in light of the undisputed facts.

In the direct delivery system the envelopes containing the allotments are packaged by DMIC in Springfield and delivered to IDPA agents, typically currency exchanges, by armored car. Recipients then go to these agents to pick up their allotments. Nowhere in this chain of transport are the envelopes deposited with the United States Postal Service as contemplated by the mail issuance rules. 7 C.F.R. § 274.3(c)(1)(i). It is not disputed that IDPA applies the two replacement request and inventory discrepancy rules to direct delivery issuances. That policy violates the regulations. Illinois households which receive food stamp allotments through the direct delivery system are entitled to receive replacement allotments without regard to the two replacement request rule or the inventory discrepancy rule.

In the diverted delivery system envelopes containing allotments are sent from DMIC to IDPA local offices either by the mail or by armored car. Allotments sent to the local offices by armored car are not properly subject to the two replacement request rule or the inventory discrepancy rule because the mails are not used. The same result holds for those allotments which are sent to local offices through the mails. The regulations contemplate that the rules which limit replacement of allotments only apply to allotments which are mailed by the state agency directly to recipient households. 7 C.F.R. § 274.3(c)(1) states that "[w]hen a *household* reports the nondelivery of an allotment or partial allotment of coupons issued through the mail" then certain restrictions apply to the issuance of replacements. In the diverted delivery system envelopes containing the allotments are not issued to the households until a recipient appears at an IDPA local office and receives the envelope. Envelopes mailed to the local offices may indeed become lost or stolen in the mails. But those envelopes have not been mailed to the recipients. The special rules limiting replacement of allotments lost or stolen in the mails were designed, in part, to protect against fraud by recipients who claim they never received their allotments. Thus 7 C.F.R. § 274.3(c)(3) provides that after a household makes two reports of non-delivery of either full or partial allotments in a six month period the state agency shall switch that household to a non-mail issuance system. When mail is lost or stolen on the way from one IDPA division or agent to another the reasons for limiting replacement allotments which are issued through the mail do not exist. If a loss occurs, it should be borne by IDPA and not the recipient households.

IDPA's position that it has only one delivery system has been rejected by Monroe Woods, Regional Administrator of USDA's Food and Nutrition Service. Pl.St. ¶ 26. Letter dated February 22, 1983 to Jeffrey C. Miller, IDPA Director. Grace Dep., Pt. I, Pl.Ex. 12. Woods' letter states, "The fact that all food stamp allotments are inserted into the same type of envelope by the same automated process is not, in our opinion, enough of a factor to label both systems as one and the same." Woods said that IDPA has two issuance systems— direct mail and direct delivery. IDPA's application of the two replacement and the inventory discrepancy rules to the direct and diverted delivery systems violates the regulations issued under the Food Stamp Act.

3. Application of the Two Replacement Request Rule To The Named Plaintiffs (Skipper, Tatum and Anderson)

The regulations provide,

The State agency shall issue replacement coupons only if the coupons are reported stolen from the mail or lost in the mail in the period of their intended use and the household requesting the replacement has not already been issued two replacements in the previous 5 months.

7 CFR § 274.3(c)(1)

Although not explicit, it is clear from a reading of § 274.3(c) that this rule applies when coupons are reported lost or stolen in the mails and the household requesting replacement has been issued two replacements in the previous five months for coupons which were themselves reported lost or stolen in the mails. This interpretation is confirmed by § 274.3(c)(3) which provides,

After two reports by a household of non-delivery of either full or partial allotments in a 6–month period, the State agency shall utilize other issuance methods for that household.

It follows that the two replacement request rule was improperly utilized by IDPA to deny replacement stamps to the Skipper, Tatum and Anderson households. The Anderson household failed to receive its October 1983 allotment through the direct delivery issuance system, one of the unsuccessful attempts to replace those coupons was mailed to a local IDPA office and the other to the Anderson household. For the reasons explained in section 2 above, the two replacement request rule could not be applied to the original direct delivery. And only one of the two attempted replace-

ments was by direct mail issuance to the Anderson household.

The Skipper and Tatum households reported allotments lost or stolen in the mails but in each case the two attempts to deliver replacement coupons were by delivery to a local IDPA office. Those were not direct mail issuances under the regulations and IDPA therefore violated § 274.3(c)(1) when it denied replacement coupons to those households.

### 4. Requests vs. Issuances

Plaintiffs' challenge IDPA's policy of denying replacement allotments where there have been two requests rather than two issuances, whether or not the household actually received replacement allotments. The Skipper, Tatum and Anderson plaintiffs each had replacement requests denied because of IDPA's policy denying replacement requests from a household which has made two requests for replacement allotments in the preceding five months. The regulations provide that the State agency shall issue replacements for allotments which are "reported stolen from the mail or lost in the mail in the period of their intended use and the household requesting the replacement has not already been *issued* two replacements in the previous five months." 7 C.F.R. § 274.3(c)(1) (emphasis added). Under IDPA's policy households which make two requests but which never receive any replacement allotments are barred from receiving replacements upon the third request. IDPA argues that once a request for replacement has been approved the allotment requested has been *issued*. IDPA treats all "requests" as approved even though the requests may not be granted and the requesting household never receives replacement coupons. IDPA offers nothing to justify its peculiar interpretation of "issued". The regulation clearly contemplates that a third replacement in any six month period will be denied to a household which has already received two replacements during that period. This accords with the common understanding of "issued" as including actual delivery. When a household makes two *reports* of nondelivery by mail in a six month period,

the state agency is required to switch that household to a non-mail issuance system until the risk of loss is passed. 7 C.F.F. § 274.3(c)(3). But the regulations do not permit denial of replacement allotments based only on reports of nondelivery.

### 5. Application of the Inventory Discrepancy Rule To Named Plaintiffs (Harris and Gardner)

Plaintiffs Harris and Gardner received food stamps by direct delivery. For the reasons already explained IDPA's method of delivery is not a mail issuance system as defined by USDA regulations. The denial of replacement food stamps for those plaintiffs based on the inventory discrepancy rule therefore violated those regulations.

### 6. Plaintiffs' Attack On Non–Compliance With The 10 Day Rule, IDPA's Methods of Determining Inventory Discrepancies, IDPA's Failure To Switch Recipients To Other Issuance Systems and Due Process Claims

Plaintiffs contend that IDPA systematically fails to issue replacement coupons no more than 10 days after receiving a report of nondelivery for allotments delivered through the mail, as required by 7 C.F.R. § 274.3(c)(1)(iv). Plaintiffs' however do not have standing to challenge IDPA's practices in this regard since no plaintiff complains of delay. Rather, each named plaintiff complains that replacement allotments were denied altogether. No named plaintiff has been personally injured by IDPA's tardiness in delivering replacement allotments.

The named plaintiffs' also lack standing to attack IDPA's methods for determining inventory discrepancies. The Harris and Gardner plaintiffs who were denied replacement allotments because of the inventory discrepancy rule, as explained above, were not properly subject to that rule because they did not receive their allotments in a mail issuance system. Their injury resulted from being subjected to a rule which did not apply to them at all. They do not have standing to complain on behalf

of other food stamp recipients who are properly subject to an inventory discrepancy rule but who may be harmed because of the way in which IDPA determines inventory discrepancies.

■ The Skipper and Tatum households, the only plaintiffs who received food stamps by direct mail, do not have standing to challenge IDPA's failure to switch mail recipients to other issuance systems after two reports of nondelivery in a six month period. The reason is that the record shows only unsuccessful attempts to replace allotments for the months in which nondelivery was originally requested. There is nothing to show that those plaintiffs failed to receive stamps for subsequent months because they were not switched to a different issuance system.

The first branch of plaintiffs' due process argument is their attack on IDPA's unwritten policies and procedures, all of which relate to IDPA's inventory discrepancy rule. However, Plaintiffs have pointed to no facts showing that any named plaintiff was denied a replacement allotment because of any of the unwritten policies or procedures in question. The named plaintiffs, therefore, do not have standing on this branch of their due process claim. See *Davis v. Scherer,* 468 U.S. 183, 189 n. 7 [104 S.Ct. 3012, 3017 n. 7, 82 L.Ed.2d 139] (1984) (plaintiff lacks standing to question the constitutionality of a statute which was never applied to him).

The second branch of plaintiffs' due process claim is that IDPA does not provide a fair hearing to recipients who are denied replacement allotments. Plaintiffs argue that a household that is denied its replacement allotment because of the two replacement request rule is given a hearing only as to whether IDPA authorized two replacement requests. The household will lose its appeal even if it shows that the two replacement request rule is not applicable because it did not receive its stamps under a mail issuance system or that non-receipt of replacement stamps was due to IDPA's failure to switch the household from a mail to another issuance system. Plaintiffs also say that a household that is denied replace-

ment of a partial allotment is not allowed to appeal that decision. Plaintiffs argue that households appealing adverse determinations are confronted with an irrebutable presumption which violates due process, citing *U.S. Dept. of Agriculture v. Murry,* 413 U.S. 508 [93 S.Ct. 2832, 37 L.Ed.2d 767] (1973).

### Fair Hearings And The Two–Replacement Request Rule

■ Of the three households which were denied replacements because of the two replacement request rule, only the Tatum and Anderson households requested hearings, which they received. Because Skipper did not ask for a hearing, she does not have standing to challenge the fairness of IDPA hearings.

The Tatum and Anderson households lost their appeals because the hearing officers followed IDPA's policy of equating issuances with requests. See part 4 above. As discussed above, that policy violates applicable federal regulations. In addition, the two replacement request rule should not have been applied to the Tatum and Anderson households in the first place. See part 3 above. However, plaintiffs do not complain about any procedural unfairness in the hearings. Plaintiffs attack on the fairness of their hearings is simply a different version of their attack on the substantive IDPA policies and rules which were applied. The validity of those rules and the propriety of their application has already been dealt with. The fact that an invalid substantive rule or policy was improperly applied does not constitute a procedural due process violation. *Murry,* whatever its current vitality, see Nowak, Rotunda and Young, *Constitutional Law,* 553–54 (2d ed. 1983), is not applicable here.

### Appealability of Denials Based On The Inventory Discrepancy Rule

Pl.St. ¶ 164 says, "IDPA's decision to deny a partial allotment is not appealable. Grace Dep., Part I, p. 26." Grace there testified that his *recollection* of the federal regulations was that they did not allow such an appeal. Inconsistently, Pl.St. ¶ 165, states, "A household which is denied a replacement of a partial allotment will

lose at a fair hearing if there is no evidence of damage in the mail and IDPA's inventory showed no discrepancy on the date the underissuance was packaged. First Admissions, No. 65 (Pl.Ex. A)."

Plaintiffs do not have standing to challenge IDPA's practices with respect to appeal hearings for partial allotment replacement denials since the record does not show that any household that was denied a replacement of a partial allotment because of the inventory discrepancy rule requested or was denied a hearing.

*Conclusion*

It is recommended that plaintiffs' motion for summary judgment be granted in part as follows:

1. IDPA should be ordered to issue replacement food stamps to the named plaintiffs for the food stamp allotments denied to them and to members of the plaintiff class who have been denied replacement food stamps in similar circumstances.

2. Declaratory and injunctive relief should be granted against application by IDPA of its inventory discrepancy rule to food stamp recipients who receive food stamps by direct delivery or diverted delivery.

3. The following claims should be dismissed because the named plaintiffs lack standing,

a. Plaintiffs' claims for injunctive or declaratory relief concerning the two replacement request rule.

b. Plaintiffs' claim regarding IDPA's alleged failure to issue replacement coupons no more than 10 days after receiving a report of non-delivery.

c. Plaintiffs' claims challenging IDPA's methods for determining inventory discrepancies.

d. Plaintiffs' claims attacking IDPA's failure to switch recipients to other issuance systems after two reports of nondelivery by mail in a six month period.

e. Plaintiffs' claims attacking IDPA's unwritten policies and procedures relating to IDPA's inventory discrepancy rule.

f. Plaintiffs' claims challenging IDPA's appeal procedures or alleged failure to provide appeals for partial allotment replacement denials.

4. That the parties be directed to submit an appropriate form of judgment for the court's approval, pursuant to F.R.Civ.Proc. 58.

Under 28 U.S.C.A. § 636(b)(1) the parties have 10 days from service hereof to file written objections to this Report and Recommendation with Judge Norgle. Failure to file such objections will normally waive the right to appeal the rulings set forth in this Report and Recommendation. *Lockert v. Faulkner*, 843 F.2d 1015 (7th Cir.1988).

Respectfully submitted,
/s/ Bernard Weisberg
Bernard Weisberg
United States Magistrate

June 28, 1988