ACCEPTED
15-25-00010-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
4/22/2025 5:01 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00010-CV**

_____

In the Court of Appeals
for the Fifteenth Judicial District
Austin, Texas

_____

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
4/22/2025 5:01:03 PM
CHRISTOPHER A. PRINE
Clerk

TEXAS HEALTH AND HUMAN SERVICES COMMISSION,
*Appellant*,

v.

SHANRESSA CRADDOCK,
*Appellee.*

_____

On Appeal from the 250th Judicial District Court of Travis County, Texas
Cause No. D-1-GN-22-007315

_____

**BRIEF FOR APPELLANT
TEXAS HEALTH AND HUMAN SERVICES COMMISSION**

_____

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KIMBERLY GDULA
Chief, General Litigation Division

JENNIFER COOK
Texas Bar No. 00789233
Assistant Attorney General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 475-4098
jennifer.cook@oag.texas.gov
FAX: (512) 320-0667

Counsel for Appellant
Texas Health and Human Services
Commission

# IDENTIFY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellant provides this list of parties and counsel.

| | |
|---|---|
| Appellant: | Texas Health and Human Services Commission |
| Counsel for Appellant: | Jennifer Cook<br>Texas Bar No. 00789233<br>Assistant Attorney General<br>General Litigation Division<br>Office of the Attorney General<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>Phone: (512) 475-4098<br>jennifer.cook@oag.texas.gov<br>FAX: (512) 320-0667 |
| Appellee: | Shanressa Craddock |
| Counsel for Appellee: | Elizabeth E. Ewing,<br>Texas Bar No. 24092396<br>Lone Star Legal Aid<br>164 6th SE<br>Paris, Texas 75460<br>Phone: (903) 785-8711<br>Fax: (903) 785-5990<br>Email: eewing@lonestarlegal.org<br><br>David Beyleryan<br>Texas Bar No. 24087164<br>Lone Star Legal Aid<br>Email: dbeyleyan@lonestarlegal.org |

# TABLE OF CONTENTS

IDENTIFY OF PARTIES AND COUNSEL ............................................................ ii

INDEX OF AUTHORITIES.............................................................................v

STATEMENT OF THE CASE.................................................................... viii

ISSUES PRESENTED..................................................................................... ix

STATEMENT OF THE FACTS.....................................................................1

SUMMARY OF THE ARGUMENT......................................................................5

ARGUMENT .....................................................................................................6

I. HHSC's determination to not replace benefits stolen by a third party was reasonable and supported by substantial evidence since they were stolen before HHSC was notified that the card was compromised and there was no error on HHSC's part. ....................................................................................................8

II. The district court judge's determination that there was a conflict in law is erroneous. .........................................................................................................11

    A.    Both state and federal regulations are consistent with and support HHSC Decision because they require HHSC to replace stolen benefits after a card is reported stolen/compromised, not before. ....................................................12

    B.    The district court's reliance on 7 U.S.C. § 2020(e)(11) in conjunction with the *Skipper* case is misplaced because neither applies to this situation. .14

    C.    7 CFR § 273.17(a)(1) requires replacement when benefits are lost due to an error of the state agency; there is no error by HHSC so any reliance on this provision is misplaced..................................................................................18

    D.    Both 7 U.S.C. § 2016(e) and 7 C.F.R. § 276.2(b)(7) discuss state liability to the federal government; these have nothing to do with a state's obligation to SNAP recipients. These provisions actually support HHSC because they make the one in control of the benefits at the time of loss responsible for the loss..................................................................................19

    E.    The district court's reliance on 7 C.F.R. § 277.18(m)(1) is misplaced because this case does not involve HHSC's Information Systems; section 277.18 discusses the requirements for state Information Systems to claim federal participation for the costs of such systems used for the SNAP program. ……………………………………………………………………….23

iii

PRAYER ..................................................................................................................25

# INDEX OF AUTHORITIES

**Cases**

*Cameron v. Terrell & Garrett, Inc.*,
618 S.W.2d 535 (Tex. 1981) ...............................................................................14

*City of Richardson v. Oncor Elec. Delivery Co. LLC*,
539 S.W.3d 252 (Tex. 2018) ...............................................................................13

*N. E. Indep. Sch. Dist. v. Riou*,
598 S.W.3d 243 (Tex. 2020) .................................................................................9

*Skipper v. Duffy*,
703 F. Supp. 697 (ND Ill 1988) ................................................. 12, 15, 16, 17, 18

*Tex. Comm'n on Env't Quality v. Friends of Dry Comal Creek*,
669 S.W.3d 506 (Tex. App.—Austin 2023, pet. denied) .......................................8

*Tex. Dep't of Pub. Safety v. Stanley*,
982 S.W.2d 36 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ...........................7

*Tex. Dep't of Pub. Safety v. Valdez*,
956 S.W.2d 767 (Tex. App.—San Antonio 1997, no pet.) ...................................7

*Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors*,
24 S.W.3d 893 (Tex. App.—Austin  2000), *rev'd on other grounds*, 92 S.W.3d
477 (Tex. 2002) ....................................................................................................7

*TGS-NOPEC Geophysical Co. v. Combs*,
340 S.W.3d 432 (Tex. 2011) ...............................................................................13

**Statutes**

7 U.S.C. § 2012(p) .............................................................................................20

7 U.S.C. § 2016(e) ......................................................... 12, 19, 20, 21, 22

7 U.S.C. § 2020(b) .................................................................................. 15, 16

7 U.S.C. § 2020(e)(11) ........................................................................ 12, 14, 15

Tex. Gov't Code § 545.0154 .......................................................................... viii

Tex. Gov't Code § 545.0154(e) .............................................................................6

Tex. Gov't Code § 2001.174 ................................................................7

Tex. Hum. Res. Code § 33.0006 .........................................................1

Tex. Hum. Res. Code § 33.002(a) ......................................................1

Nonsubstantive Revision of the Health and Human Services Laws Governing the Health and Human Services Commission, Medicaid, and Other Social Services, Acts 2023, 88th Leg., R.S., ch. 769, §§ 1.01, 3.01(1) (H.B. 4611) (recodifying Tex. Gov't Code § 531.019 to Tex. Gov't Code § 545.01554) ......................... viii

**Rules**

Tex. R. App. P. 9.4(e) ......................................................................26

Tex. R. App. P. 9.4(i) .......................................................................26

Tex. R. App. P. 9.4(i)(1) ..................................................................26

**Regulations**

1 Tex. Admin. Code § 372.1519 ............................................... 12, 13, 23

1 Tex. Admin. Code § 372.1519(a) ............................................11, 23

1 Tex. Admin. Code § 372.1701(8) ..................................................1

7 C.F.R. § 271.2 ................................................................................20

7 C.F.R. § 273.17(a)(1) ............................................... 12, 18, 19

7 C.F.R. § 274.3 (1984) ...................................................................17

7 C.F.R. § 274.3(c) (1984) ..............................................................17

7 C.F.R. § 274.3(c)(1)(1984) ...........................................................17

7 C.F.R. § 274.3(c)(1)(iv) (1984) ....................................................17

7 C.F.R. § 274.6(b)(2) .............................................................11, 13, 23

7 C.F.R. § 276.2 ................................................................................20

7 C.F.R. § 276.2(a) ...........................................................................20

7 C.F.R. § 276.2(b)(7) ............................................... 12, 19, 21, 22, 23

7 C.F.R. § 277.18 ..............................................................................................24

7 C.F.R. § 277.18(b).........................................................................................24

7 C.F.R. § 277.18(m)(1) ....................................................................... 12, 23, 24, 25

**Other Authorities**

*Overissue*, Black's Law Dictionary (12th ed. 2024)..................................................22

*Overissue*, Merriam-Webster.com Dictionary, Merriam-Webster,
https://www.merriam-webster.com/dictionary/overissue (accessed April 22,
2025) ...........................................................................................................22

# STATEMENT OF THE CASE

**Nature of the case**. Appellee, Shanressa Craddock ("Craddock"), petitioned the district court for judicial review of a decision of Appellant, Texas Health and Human Services Commission ("HHSC"). CR at 4.[1] Craddock asked HHSC to replace Supplemental Nutrition Assistance Program ("SNAP") benefits stolen from her by an unknown third party. CR at 5. In an administrative decision subject to judicial review, Craddock's request was denied. AR at 39-44, 52. Craddock sought a substantial evidence judicial review of that decision under Texas Government Code chapter 2001, the Administrative Procedures Act ("APA"). Tex. Gov't Code § 545.0154.[2]

**Course of proceedings**. The parties submitted briefs to the district court. CR at 49-80, 85-107, 108-121. There was a hearing on November 14, 2024. RR at 1. The administrative record was admitted into evidence. RR at 4, 26. At the hearing, the district court judge took the matter under advisement. RR at 25.

**Trial court disposition**. The district court rendered judgment for Craddock, finding substantial evidence does not support HHSC's decision, and the decision was contrary to law. CR at 126. The district court judge ordered HHSC to restore Craddock's benefits in the amount of $930, the full amount requested. *Id.*

---

[1] The clerk's record will be referenced as "CR at [page no.]." The reporter's record will be referenced as "RR at [page no.]." The administrative record will be referenced as "AR at [page no.]."

[2] The provision in effect at the time the petition for review was filed was Texas Government Code section 531.019. Section 531.019 was repealed effective April 1, 2025 due to a nonsubstantive reorganization of some HHSC laws. Nonsubstantive Revision of the Health and Human Services Laws Governing the Health and Human Services Commission, Medicaid, and Other Social Services, Acts 2023, 88th Leg., R.S., ch. 769, §§ 1.01, 3.01(1) (H.B. 4611) (recodifying Tex. Gov't Code § 531.019 to Tex. Gov't Code § 545.01554).

# ISSUES PRESENTED

Craddock seeks to force HHSC to reimburse her for benefits that were stolen from her by an unknown third party and through no fault of HHSC. Craddock gave a third party sensitive information about her SNAP benefits Electronic Benefit Transfer card—which is similar to a debit card except the card contained her SNAP benefits—including her Personal Identification Number ("PIN"). Within a day, there was an unauthorized transaction on her card of $930. Craddock asserts HHSC was required to replace the stolen benefits by pointing to several federal statutes and regulations. Yet none of the federal statutes or rules conflict with HHSC's decision to not replace the benefits and, in fact, they do not apply to this situation. The questions presented are:

1. Was HHSC's decision declining to replace benefits admittedly stolen by a third party, through no fault of HHSC, supported by substantial evidence?

2. Did the district court err in finding HHSC's decision conflicts with federal law when the federal laws cited to by Craddock and the district court are inapplicable to this scenario and consistent with HHSC's determination?

**STATEMENT OF THE FACTS**

Shanessa Craddock ("Craddock") was a SNAP recipient. AR at 10. HHSC operates the SNAP program in Texas and is responsible for the distribution of SNAP benefits. Tex. Hum. Res. Code §§ 33.0006, 33.002(a). In this case, SNAP benefits were distributed to Craddock via Electronic Benefit Transfer (or "EBT"), which is an electronic system allowing public assistance benefits to be issued to a recipient via a debit card. 1 Tex. Admin. Code § 372.1701(8). The recipient authorizes transfer of benefits from the account to a retailer account to receive cash or pay for products. *Id.* The EBT card is called a Lone Star Card, which a recipient can use to pay for food. AR at 11. Craddock had a Lone Star Card and she had a PIN for it. *Id.*

On August 20, 2022, there was a withdrawal from Craddock's card account of $930.00 for purchases at a Sam's Club in Fort Worth, Texas. *Id.* Craddock contacted HHSC's SNAP program stating the $930 withdrawal from her benefits was unauthorized and requested HHSC reimburse Craddock's card for the $930. *Id.* In a letter dated September 7, 2022, a Program Specialist for the SNAP benefits program notified Craddock no system error was found and her request for benefit replacement was denied. *Id.* The card number and valid PIN was used for the disputed transaction. AR at 66.

On September 12, 2022, Craddock requested an appeal of this determination, and an administrative hearing was held by a hearing officer on October 7, 2022. AR

1

at 53, 65. At the hearing, Craddock explained what happened around the transaction in dispute.

On August 19, 2022, she received a text message that said:

(Contact 1-888-920-0797) #Lone Star Blocked.
#MSG ID 047499921

AR at 35, 70. She thought the message was from HHSC and there was a problem with her card, so she called the number. AR at 70. It was an automated system that asked her to enter her card information, and she provided her card number and PIN. AR at 70, 76. Craddock did not realize the text message and automated system were a scam; it was not HHSC she called when she gave her card information. *Id.*

On August 21, 2022, Craddock was at the grocery store, and she discovered she only had 54 cents on her card. AR at 74. She called the HHSC SNAP benefits program and was notified the text message was not from the HHSC SNAP program and, based on the information she gave, it appeared to be a scam. AR at 71.

At the hearing, Craddock acknowledged the person she gave her card information to was not HHSC and it was someone else fraudulently trying to get her information. *Id.* She acknowledged her benefits were stolen. AR at 72. She stated she did not go to Sam's Club, she did not make the $930 purchase, and she was at work at the time of the transaction on August 20, 2022. AR at 69, 74. In addition to contacting HHSC, she stated she also contacted the police, the U.S. Department of

2

Agriculture, and the Sam's Club location where the purchase occurred. AR at 68-69, 73.

HHSC also had witnesses at the hearing. HHSC presented Jennifer Landry with Access and Eligibility Services at HHSC, and Sandra Sosa with EBT Operations, as a Program Specialist. AR at 57-58. Ms. Landry confirmed the texted phone number Craddock called and gave her card information to was not an HHSC phone number. *Id.* at 75-76. Ms. Sosa further testified HHSC would never text a recipient or call a recipient and ask for their card information. *Id.*

Ms. Sosa explained that on August 29, 2022, Craddock contacted the Lone Star Help Desk to request an administrative review of the disputed transaction on Craddock's SNAP account. AR at 65-66. EBT Operations performed an administrative review to determine whether HHSC was at fault for the reported unauthorized transaction. AR at 66. Ms. Sosa testified the correct card number and valid PIN was used for the disputed transaction, which occurred on August 20, 2022. *Id.* She said on August 21, 2022 at 2:19 p.m. the card status changed to stolen, presumably due to Craddock's call to HHSC that same day. *Id.*

Ms. Sosa testified the Texas Works Handbook Policy B-341 ("Handbook") was utilized in making her administrative review determination. *Id.* According to the Handbook, HHSC replaces benefits issued through a Lone Star Card only if:

1. The loss occurs after the individual reports the card lost or stolen,

3

2. There was a local determination card/PIN issuance error, or

3. There was an unlawful or erroneous action on the part of HHSC or the HHSC contractor.

*Id.* at 66-67. Ms. Sosa clarified benefits are not replaced if the benefits at issue were withdrawn before the individual reports the card lost or stolen. *Id.* at 67. Since the review found no system error, no error on the part of HHSC or an HHSC contractor, and the disputed transaction occurred before the card was reported stolen or compromised, HHSC denied Craddock's request to replace the stolen benefits. *Id.* On September 7, 2022, EBT Operations mailed Craddock a notification informing her of the denial and her right to appeal. AR at 11-12, 67-68.

After the hearing, in a letter and order dated October 13, 2022, from the hearing officer to Craddock, the hearing officer sustained HHSC's decision to not replace the benefits. AR at 39-40. The hearing officer also provided an analysis, including findings of fact and conclusions of law, consistent with the hearing officer's determination. AR at 41-44.

Craddock's attorney requested an administrative review of the October 13, 2022 hearing decision on November 14, 2022. AR at 46. An Administrative Law Judge ("ALJ") for HHSC conducted the administrative review. AR at 52. The ALJ issued a November 23, 2022 decision letter to Craddock ("Decision"), upholding the hearing officer's determination because all policies and procedures had been

properly applied. AR at 52. The letter notified Craddock of the right to judicial review of this Decision under the Texas Government Code. AR at 52. Craddock sought judicial review of the November 23, 2022, Decision via this suit.

## SUMMARY OF THE ARGUMENT

Craddock had the burden to establish that HHSC's Decision not to replace benefits stolen from her after she provided her card and PIN to a third party and before she reported her card information as stolen is either not supported by substantial evidence or is contrary to existing law. She failed to do so, and the district court erred in holding otherwise.

There is substantial evidence Craddock gave her SNAP benefits EBT card information to an unknown and unauthorized person via a phone conversation, and then the unauthorized person used the information for a $930 unauthorized transaction on August 20, 2022. There is substantial evidence the unauthorized transaction was not due to any error or fault by HHSC.

After the unauthorized transaction, Craddock contacted HHSC and requested that HHSC replace the stolen benefits. Consistent with HHSC regulations, policies and procedures, HHSC declined to replace the benefits because the transaction was not due to any error on HHSC's part and took place before Craddock reported her card information as stolen.

5

While HHSC's determination was consistent with its regulations and policies, the district court incorrectly held that HHSC's determination not to replace the stolen benefits conflicts with federal statutes and regulations governing federal governmental assistance benefits. While the district court cites various statutes and regulations, none of the district court's cited authorities apply to this situation, and none of them require HHSC to replace the stolen benefits. Since there is no legal authority requiring HHSC to replace stolen SNAP benefits in this situation, the district court's reversal of HHSC's Decision was erroneous. This Court should reverse the district court's ruling and affirm HHSC's Decision.

## ARGUMENT

This case is a judicial review of the HHSC Decision declining Craddock's request to have her stolen benefits of $930 replaced by HHSC. Section 545.0154 of the Texas Government Code provides for judicial review of a hearing officer decision related to public assistance benefits "under the substantial evidence rule" as provided in the APA. Tex. Gov't Code § 545.0154(e).

The scope of judicial review of agency decisions under the substantial-evidence rule is set forth in the APA as follows:

> If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:

6

(1) may affirm the agency decision in whole or in part; and

(2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

> (A) in violation of a constitutional or statutory provision;
>
> (B) in excess of the agency's statutory authority;
>
> (C) made through unlawful procedure;
>
> (D) affected by other error of law;
>
> (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
>
> (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code § 2001.174. Each ground for reversal under the APA presents a question of law, which appellate courts review de novo. *See Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors*, 24 S.W.3d 893, 898 (Tex. App.—Austin 2000), *rev'd on other grounds*, 92 S.W.3d 477 (Tex. 2002); *Tex. Dep't of Pub. Safety v. Stanley,* 982 S.W.2d 36, 37 (Tex. App.—Houston [1st Dist.] 1998, no pet.); *Tex. Dep't of Pub. Safety v. Valdez,* 956 S.W.2d 767, 769 (Tex. App.—San Antonio 1997, no pet.). In this case, the district court reversed HHSC's Decision and found the Decision was not supported by substantial evidence and was contrary to law. CR at 126.

There was substantial evidence supporting the determination in the Order that HHSC was not going to replace Craddock's benefits stolen by a third party. Such

determination was reasonable and does not conflict with any laws.

**I. HHSC's determination to not replace benefits stolen by a third party was reasonable and supported by substantial evidence since they were stolen before HHSC was notified that the card was compromised and there was no error on HHSC's part.**

The district court erroneously found HHSC's determination was not supported by substantial evidence. CR at 126. Yet there was ample evidence to support HHSC's determination not to replace Craddock's stolen benefits, particularly considering the deferential standard of review the district court—and this Court—must apply.

Under the substantial evidence rule, the court reviews the evidence as a whole to determine if reasonable minds could have reached the same conclusion as the agency in the disputed action. *Tex. Comm'n on Env't Quality v. Friends of Dry Comal Creek*, 669 S.W.3d 506, 516–17 (Tex. App.—Austin 2023, pet. denied). The courts do not substitute their judgment for that of the agency and may only consider the record on which the agency based its decision. *Id.* The courts presume the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden to prove otherwise is on the party challenging the agency decision. *Id.* The agency's decision should be reversed only if the party challenging the decision demonstrates the absence of substantial evidence has prejudiced the party's substantial rights. *Id.*

Although substantial evidence is more than a mere scintilla, the evidence in the record may actually preponderate against the agency's decision and nonetheless amount to substantial evidence. *Id.* Review under the substantial-evidence rule is highly deferential—the issue is not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for it. *N. E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020).

Here, substantial evidence supports HHSC's denial of replacement benefits to Craddock. The evidence shows Craddock received a text on August 19, 2022, and in response, Craddock called the phone number provided in the text, believing the sender was associated with HHSC, and provided an unauthorized third party with her card and PIN. AR at 35, 70-76. However, the text was not from HHSC or anyone associated with HHSC. AR at 71-72, 75-76. That third party appears to have utilized the information Craddock provided about her card in an unauthorized transaction of $930 on August 20, 2022. AR at 33-38, 68-71. After Craddock realized benefits were missing from her card, she contacted HHSC and the card's status was changed to stolen. AR at 66. Even though it was Craddock who gave her card information and PIN to a third party and HHSC had nothing to do with it, Craddock requested HHSC reimburse her for the stolen $930. HHSC denied the request.

While the situation is unfortunate, HHSC's Decision not to replace the stolen amount is supported by substantial evidence and is reasonable and comported with

9

HHSC regulations and policies. HHSC's Handbook informs its agents as to how to address requests for reimbursement. According to HHSC's Handbook, HHSC only reimburses benefits if:

1. The loss occurs after the individual reports the card lost or stolen,

2. There was a local determination card/PIN issuance error, or

3. There was an unlawful or erroneous action on the part of HHSC or the HHSC contractor.

AR at 66-67. These requirements in the Handbook are reasonable. Basically, if the loss occurred due to a reason within HHSC's control, HHSC will authorize reimbursement. However, HHSC does not reimburse for losses due to a recipient giving a third party the card and PIN information, allowing a third party to make an unauthorized transaction before HHSC has been alerted of a compromised card. HHSC has no control over who a recipient gives such information to; only the recipient is in control over who he/she gives the information to. HHSC has no obligation to assume responsibility for recipients giving unauthorized persons information that enables the unauthorized persons to access the recipient's benefits. Of course, according to HHSC's Handbook, if a recipient reports a card stolen or compromised after giving unauthorized persons such information, HHSC would reimburse any amount of loss occurring after the card was reported stolen because under federal and state regulations HHSC is required to place an immediate hold on

the card and replace benefits drawn from the account after the card has been reported lost, stolen or compromised. *See* 1 Tex. Admin. Code § 372.1519(a); 7 C.F.R. § 274.6(b)(2).[3]

In this case, the loss of $930 occurred before the card was reported stolen. AR at 11, 66. Craddock acknowledges she gave an unauthorized person her card information shortly before she incurred the loss. AR at 71. The uncontroverted evidence in the record establishes no one at HHSC was involved with texting Craddock and there was no error found on HHSC's part. AR 65-66, 75-76. Where the text came from and how the texter obtained Craddock's phone number and why Craddock's phone number was chosen is unknown. HHSC's Decision not to replace the $930 was supported by substantial evidence and was reasonable. The district court erred in overturning HHSC's Decision. This Court should reverse and affirm HHSC's Decision as supported by substantial evidence.

## II. The district court judge's determination that there was a conflict in law is erroneous.

The district court found HHSC's Decision not to replace Craddock's stolen benefits was contrary to law and the provisions in the Handbook relied on were "outdated, unworkable, and in conflict with law." CR at 126. The district court cited

---

[3] A copy of these regulations are in the Appendix.

11

to the following in support of the proposition that the determination was contrary or in conflict with law: 7 U.S.C. § 2020(e)(11); 7 C.F.R. § 273.17(a)(1); 7 U.S.C. § 2016(e); 7 C.F.R. § 276.2(b)(7); 7 C.F.R. § 277.18(m)(1); 1 Tex. Admin. Code § 372.1519; and *Skipper v. Duffy*, 703 F. Supp. 697 (ND Ill 1988). *Id.* A review of each of the legal authorities cited by the district court shows HHSC's determination did not conflict with any of these legal authorities; rather, the majority are entirely inapplicable to Craddock's circumstances.

> **A.  Both state and federal regulations are consistent with and support HHSC Decision because they require HHSC to replace stolen benefits after a card is reported stolen/compromised, not before.**

A state regulation identified by the district court in finding against HHSC is an HHSC regulation at title 1, section 372.1519 of the Texas Administrative Code. It is unclear why this regulation was identified by the district court because it is consistent with HHSC's determination. Both this state regulation and federal regulations require HHSC to replace stolen benefits after a card is reported stolen, but not before.

The Texas regulation states:

(a) The Texas Health and Human Services Commission (HHSC) replaces benefits removed without authorization **after** the household or authorized representative reports a lost or stolen EBT card or compromised personal identification number to the EBT call center.

(b) HHSC does not replace benefits, except as provided in subsection (a) of this section.

12

1 Tex. Admin. Code § 372.1519 (Tex. Health and Human Servs. Comm'n, Reporting and Replacing Lost or Stolen Benefits) (emphasis added). It states the only situation in which HHSC will replace benefits removed from an EBT card without authorization is for transactions that take place *after* the card is reported as lost, stolen or compromised—not before. *Id.*

Similarly, federal regulations require the state to replace stolen benefits after a card is reported stolen, not before. 7 C.F.R. § 274.6(b)(2). The federal regulation states:

> Once a household reports that their EBT card has been lost or stolen, the State agency shall assume liability for benefits subsequently drawn from the account and replace any lost or stolen benefits to the household.

7 C.F.R. § 274.6(b)(2). This regulation, like the state regulation, requires states to replace benefits that are stolen after a card is reported lost or stolen, not before. There is no mention of requiring states to replace stolen benefits before a card is reported stolen. Courts interpret regulations, like statutes, under traditional principles of statutory construction. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). If there is ambiguity in the meaning of statutory or regulatory language, the Court can utilize the principles of statutory construction. *See City of Richardson v. Oncor Elec. Delivery Co. LLC*, 539 S.W.3d 252, 261–62 (Tex. 2018). It is a rule of statutory construction that every word must be presumed to have been

used for a purpose; every word excluded from a statute must also be presumed to have been excluded for a purpose. *Id.* at 260 (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)). The fact that the regulations expressly include requiring replacement of stolen benefits after a card is reported stolen and do not mention requiring replacement before, suggests there is no requirement to replace stolen benefits before a card is reported stolen.

In this case, HHSC's determination is consistent with these regulation. Craddock's benefits were stolen via a transaction that occurred before she reported the card as compromised. According to these regulations, HHSC should decline to replace the benefits related to the unauthorized transaction because the transaction occurred before the card was reported as compromised. This is exactly what HHSC did. HHSC's actions were consistent with, rather than in conflict with, these regulations, and it is the trial court's ruling otherwise that is erroneous.

**B.      The district court's reliance on 7 U.S.C. § 2020(e)(11) in conjunction with the *Skipper* case is misplaced because neither applies to this situation.**

One citation by the district court is 7 U.S.C. § 2020(e)(11). This federal provision requires that in operation of SNAP benefits, states like Texas shall provide for the prompt restoration of any benefits which are wrongfully denied or terminated. *See* 7 U.S.C. § 2020(e)(11). It specifically states in its entirety:

14

(11) upon receipt of a request from a household, for **the prompt restoration** in the form of benefits to a household **of any allotment** or portion thereof which has been **wrongfully denied or terminated**, except that allotments shall not be restored for any period of time more than one year prior to the date the State agency receives a request for such restoration from a household or the State agency is notified or otherwise discovers that a loss to a household has occurred;

*Id.* (emphasis added). This section requires restoration of any benefits "wrongfully denied or terminated." *Id.* Yet, in this case there were no denied or terminated benefits—wrongfully or otherwise—and Craddock never claimed there were. Benefits were stolen from Craddock after she gave her card and PIN information to an unknown third party; she did not have her benefits denied or terminated by HHSC. So this section is simply inapplicable to this situation.

At the district court level, Craddock argued section 2020(e)(11) in conjunction with 7 U.S.C. § 2020(b) and the *Skipper v. Duffy* case requires HHSC to replace the stolen benefits. CR at 68-69. The district court also referenced the *Skipper* case in reversing HHSC's Decision. CR at 126. Section 2020(b) relates to improperly denied, terminated and underissued benefits. 7 U.S.C. § 2020(b). In addition to being no improper denial or termination, there is no underissuance of benefits in this case. Section 2020(b) states:

> **When a State agency learns**, through its own reviews under section 2025 of this title or other reviews, or through other sources, **that it has improperly denied, terminated, or underissued benefits to an eligible household, the State agency shall promptly restore any improperly denied benefits** to the extent required by subsection

15

(e)(11) and section 2023(b) of this title, and shall take other steps to prevent a recurrence of such errors where such error was caused by the application of State agency practices, rules or procedures inconsistent with the requirements of this chapter or with regulations or policies of the Secretary issued under the authority of this chapter.

7 U.S.C. § 2020(b) (emphasis added). Section 2020(b) relates to improperly denied, terminated and underissued benefits. 7 U.S.C. § 2020(b). In addition to there being no improper denial or termination, there is no underissuance of benefits.

Craddock maintains the benefits stolen from her amounts to an underissuance. CR at 68-70. Craddock claims the stolen benefits were never delivered to her, so they qualify as an underissuance and should be replaced. *Id.* Yet, the benefits were delivered to her: the card contained the issued benefits in the appropriate amount that were subsequently stolen. Indeed, the benefits could not have been stolen if they had not first been issued and delivered to Craddock.

Craddock and the district court relied on the case *Skipper v. Duffy.* 703 F. Supp. 697 (ND Ill 1988). CR at 68, 126. The 1988 Northern District of Illinois *Skipper* case is readily distinguishable from this case.

In the *Skipper* case, the benefit recipients received food stamps via a mail issuance system. *Skipper*, 703 F. Supp. at 699, 702. There were specific regulations for mail issuance systems at the time such that required a state agency to provide replacement coupons no more than 10 days after receiving a report of non-delivery

16

by mail. *Id.* at 702-703 (citing to prior version of "7 C.F.R. § 274.3(c)(1)(1984)").

The Plaintiffs in the *Skipper* case filed their lawsuit in 1984. *Id.* at 701. The

regulations at issue during the timeframe of the *Skipper* case were specific to mail

delivery of food stamps, not benefits received via an EBT system, such as used today

and in this case. At the time, 7 C.F.R § 274.3 was titled "Issuance of coupons through

the mail." 7 C.F.R. § 274.3 (1984).[4] Subsection (c) was titled "Coupons lost in the

mail prior to receipt." 7 C.F.R. § 274.3(c) (1984). Subsection (c)(1), the section

referred to in the *Skipper* case, specifically and expressly required state agencies to

replace food stamp coupons that were reported stolen or lost in the mail. 7 C.F.R. §

274.3(c)(1)(iv) (1984) (requiring a state agency to "Provide the replacement no more

than 10 days after the report of nondelivery has been received."). The court in the

*Skipper* case merely acknowledged what was plainly stated in the regulation at the

time in holding that the state was required to replace the food stamps that were not

delivered via mail. *Skipper*, 703 F. Supp. at 702.

The non-binding court's interpretation of regulations in *Skipper* regarding

mail delivery and benefit replacement is unpersuasive and of no consequence in this

case. The district court and Craddock's reliance on these legal authorities as

somehow supporting this case is misplaced. In this case, there were no benefits

---

[4] A copy of the 1984 version of the regulation is in the Appendix.

issued by mail, there was no report of non-delivery of benefits by mail, and the regulations addressed in *Skipper* do not apply. Since there were no benefits wrongly terminated, denied or underissued, these cited federal laws are inapplicable and the district court's ruling should be reversed.

**C.    7 CFR § 273.17(a)(1) requires replacement when benefits are lost due to an error of the state agency; there is no error by HHSC so any reliance on this provision is misplaced.**

Another federal regulation cited to by the district court is 7 C.F.R. § 273.17(a)(1). It states a state agency "shall restore to households benefits which were lost whenever the loss was caused by an error by the State agency . . . ." 7 C.F.R. § 273.17(a)(1). In this case there is no evidence or determination of an error by HHSC or anyone it contracts with. The witness for HHSC, Ms. Sosa, testified EBT Operations performed an administrative review of Craddock's account to determine whether the state was at fault. AR at 66. She noted the card number and valid PIN were used for the disputed transaction. *Id.* She also considered the fact that Craddock's card status was changed to stolen on August 21, when Craddock notified HHSC of the disputed transaction. *Id.* She testified that pursuant to the review, there was no system error, no error on the part of HHSC personnel, and no error by HHSC's vendor. *Id.* at 67.

18

Craddock did not present any evidence otherwise. Rather, her own evidence demonstrates the loss was due to Craddock giving her card information to a third party scammer that was not in any way associated with HHSC. AR at 33-38, 64-65, 68-71. Ms. Landry, another HHSC witness, testified the phone number with the text and the number Craddock called and revealed her card information to was not an HHSC phone number. *Id.* at 75-76. Ms. Sosa further testified HHSC would never text a recipient or call a recipient and ask for their card information. *Id.* Because there was no evidence of any error on HHSC's part, this provision does not apply. There is no conflict between HHSC's Decision and this federal regulation, and this Court should reverse the trial court's decision and affirm HHSC's Decision.

**D.** **Both 7 U.S.C. § 2016(e) and 7 C.F.R. § 276.2(b)(7) discuss state liability to the federal government; these have nothing to do with a state's obligation to SNAP recipients. These provisions actually support HHSC because they make the one in control of the benefits at the time of loss responsible for the loss.**

The district court also relied on 7 U.S.C. § 2016(e) and 7 C.F.R. § 276.2(b)(7) in finding HHSC's Decision conflicted with federal law. Yet these provisions have nothing to do with any obligation HHSC has to a SNAP recipient. Rather, they discuss state liability to the federal government in certain situations.

In 7 U.S.C. § 2016(e), it states:

(e) State issuance liability
Notwithstanding any other provision of this chapter, **the State agency shall be strictly liable to the Secretary for any financial losses**

19

**involved in the acceptance, storage and issuance of benefits**, except that in the case of losses resulting from the issuance and replacement of authorizations for benefits which are sent through the mail, the State agency shall be liable to the Secretary to the extent prescribed in the regulations promulgated by the Secretary.

7 U.S.C. § 2016(e) (emphasis added). This statute makes states liable to the "Secretary" for financial losses incurred in the state's acceptance, storage and issuance of benefits. *Id.* "Secretary" refers to the federal Secretary of Agriculture. 7 U.S.C. § 2012(p). Hence, this statute discusses liability of the state to the federal government and has no bearing on whether HHSC is liable to Craddock to replace her stolen benefits.

Similarly, 7 C.F.R. § 276.2 discusses state liabilities to the federal governmental unit "FNS" providing that "[s]tate agencies shall be responsible to FNS for any financial losses involved in the acceptance, storage and issuance of coupons." 7 C.F.R. § 276.2(a). "FNS" refers to the Food and Nutrition Service of the U.S. Department of Agriculture. 7 C.F.R. § 271.2. The regulation goes on to state:

> **State agencies shall be held strictly liable** [to FNS] **for overissuances** resulting from Electronic Benefit Transfer system errors and unauthorized account activities. Such overissuances shall include but not be limited to: Overissuances to household accounts that are accessed and used by households, replacement benefits to a household's account due to unauthorized use of the benefits in a household's account, benefits drawn from an EBT account after the household has reported that the EBT card is lost or stolen to the State or its agent, overdraft situations due to the use of manual back-up procedures

20

approved by the State agency, overcredits to a retailer account and transfer of funds to an illegitimate account.

7 C.F.R. § 276.2(b)(7) (emphasis added). This regulation, similar to the statute at 7 U.S.C. § 2016(e), discusses state liability to the U.S. Department of Agriculture, not to benefit recipients. Additionally, it applies to *overissuances*, not to stolen benefits. These provisions discuss the relationship between the federal and state government. These provisions have nothing to do with the relationship between HHSC and a SNAP recipient and consequently fail to address any responsibility of HHSC to a SNAP recipient.

This statute and regulation holds states liable to the federal government for overissuances when the security of the benefits is in the state's control, recognizing that overissuances necessarily would be made by the state agency, since the state is responsible for issuing the benefits.

Notably, these provisions are consistent with the notion that the one who is in control of the benefits, or the one who errs, is responsible for any financial loss. In these provisions, when the state is in control of benefits and the federal government has relinquished control, the state is liable for financial loss. Similarly, the HHSC Decision is consistent in that if a loss occurs while the recipient is in control of the benefits and after the state has relinquished control, and there is no error by the state, the recipient is responsible for any financial loss.

21

In this case, the benefits were available to Craddock on the card and were in her control at the time of the loss. The state had relinquished control of the benefits to her, and it was Craddock who gave the unauthorized person the card information that enabled the unauthorized person to use the card information in the unauthorized transaction. There is definitely no conflict of law between HHSC's Decision and these provisions, 7 U.S.C. § 2016(e) and 7 C.F.R. § 276.2(b)(7); in fact, these provisions support HHSC's Decision. This Court should affirm HHSC's Decision by reversing the trial court's ruling.

Importantly, this provision makes clear that HHSC would not be reimbursed for any replacement to Craddock, even though the benefits were lost through no fault of the HHSC. Rather, the replacement benefits would amount to an *overissuance*, and any replacement would not come from federal benefit funds but from other state monies. An overissuance is an issuance exceeding the limit of capital credit, or authority. *Overissue*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/overissue (accessed April 22, 2025) (defined as "an issue exceeding the limit of capital, credit, or authority"); *overissue*, Black's Law Dictionary (12th ed. 2024) (defined as "[a]n issue of securities beyond the authorized amount of capital or credit"). Categorizing the type of replacement as Craddock seeks as an "overissuance" indicates that this type of replacement would be outside or over the amount authorized by the program.

22

7 C.F.R. § 276.2(b)(7) expressly states the state will be liable for "replacement benefits to a household's account due to unauthorized use of the benefits in a household's account." So, if a state does this type of replacement, it will have to come from state monies as the federal government will not pay for this. This regulation suggests the type of replacement Craddock seeks, which has nothing to do with any allegation of state error, is not intended to be reimbursed.

In contrast, state and federal regulations require stolen benefits to be replaced after a card is reported stolen. 1 Tex. Admin. Code § 372.1519(a); 7 C.F.R. § 274.6(b)(2). There is no requirement that benefits be replaced before a card is reported stolen. There is no basis to require states to reimburse benefits stolen when a recipient provides card and PIN information to an unauthorized user.[5]

E. **The district court's reliance on 7 C.F.R. § 277.18(m)(1) is misplaced because this case does not involve HHSC's Information Systems; section 277.18 discusses the requirements for state Information Systems to claim federal participation for the costs of such systems used for the SNAP program.**

The district court's reliance on 7 C.F.R. § 277.18(m)(1) in overturning

---

[5] This is referring to a situation in which a recipient has not notified the state a card has been lost, stolen or otherwise compromised. In the situation in which a recipient does notify the state that the card has been lost or stolen, Texas, through HHSC, would reimburse for transactions after such notification. 1 Tex. Admin. Code § 372.1519. This is consistent with the one with control bearing responsibility since the state, once notified of the compromised card, has the ability to deactivate the card so that it cannot be used, and reissue a new uncompromised card.

HHSC's Decision was misplaced. Section 277.18 is titled "State Systems Advance Planning Document (APD) process." 7 C.F.R. § 277.18. An Advance Planning Document ("APD") is a brief written plan of action requesting federal financial participation to accomplish the planning activities necessary for a state agency to determine the need for, feasibility of, projected costs and benefits of an Information System ("IS") equipment or services acquisition, plan the acquisition of IS equipment and/or services, and to acquire information necessary to prepare an Implementation APD. 7 C.F.R. § 277.18(b). Yet, this case does not involve HHSC's IS or any acquisition or implementation of IS equipment or services.

The specific provision of this regulation cited to by the district court is:

(m) Information system security requirements and review process—

(1) Information system security requirements. **State and local agencies are responsible for the security of all IS projects under development, and operational systems involved in the administration of SNAP**. State and local agencies shall determine appropriate IS security requirements based on recognized industry standards or compliance with standards governing security of Federal information systems and information processing.

7 C.F.R. § 277.18(m)(1) (emphasis added). This provision merely articulates states are responsible for the security of their IS projects in the administration of SNAP.

In this case, there is no allegation regarding HHSC's IS equipment and there is no evidence to support that HHSC's IS equipment played any role in Craddock's benefits being stolen. This provision also does not impose an obligation on HHSC

24

to replace benefits in circumstances like these, where there is no dispute that Craddock was scammed into voluntarily providing access to her benefits. Since HHSC's IS equipment is not implicated by this case, 7 C.F.R. § 277.18(m)(1) is immaterial to HHSC's Decision. HHSC's Decision therefore does not conflict with this federal provision, and the trial court's ruling was erroneous.

Because HHSC's determination is supported by substantial evidence, is reasonable, and is not in conflict or contrary to any law, HHSC's determination should be upheld.

## PRAYER

For these reasons, HHSC asks the Court to reverse the district court and uphold HHSC's Decision declining to replace Craddock's stolen benefits.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/*Jennifer Cook*
JENNIFER COOK
Texas Bar No. 00789233
Assistant Attorney General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 475-4098
jennifer.cook@oag.texas.gov
FAX: (512) 320-0667

**Counsel representing Appellant,
Texas Health and Human Services
Commission**

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 6,050 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/*Jennifer Cook*
JENNIFER COOK
Assistant Attorney General

26

**No. 15-25-00010-CV**

_____

In the Court of Appeals
for the Fifteenth Judicial District
Austin, Texas

_____

TEXAS HEALTH AND HUMAN SERVICES COMMISSION,
*Appellant*,

v.

SHANRESSA CRADDOCK,
*Appellee.*

_____

On Appeal from the 250th Judicial District Court of Travis County, Texas
Cause No. D-1-GN-22-007315

_____

**APPENDIX TO BRIEF FOR APPELLANT
TEXAS HEALTH AND HUMAN SERVICSES COMMISSION**

_____

| Item | Document Description | Appx. Pg. |
|------|---------------------|-----------|
|  | Appendix Title Page | 001 |
| 1 | Administrative Decision Subject to Judicial Review | 002 |
| 2 | District Court Order Being Appealed | 004-006 |
| 3 | 7 C.F.R. § 274.6 Replacement Issuance and Cards to Households | 007-013 |
| 4 | 1 Tex. Admin. Code § 372.1519 Reporting and Replacing Lost or Stolen Benefits | 014-015 |
| 5 | 7 CFR 274.3 (1984) | 016-019 |

# Appendix 1



**Texas Health and Human Services Commission**

**Cecile Erwin Young**
*Executive Commissioner*

November 23, 2022

Shanressa Craddock
8757 Farm Road 2152
Mount Pleasant, TX 75455

Re:     Fair Hearing – Supplemental Nutrition Assistance Program (SNAP)
        Case Number: 49180511; Appeal ID: 3600661

Dear Shanressa Craddock:

The November 14, 2022, request for an administrative review of the hearing decision issued on October 13, 2022 by Hearing Officer Resendiz, was forwarded to me.  After reviewing all the facts, along with the applicable rules and policy, and listening to the hearing recording, I have determined that the Hearings Officer properly applied all policies and procedures.  Therefore, pursuant to Tex. Govt. Code § 531.019(c), I am upholding the Hearing Officer's decision.

If you disagree with this decision, pursuant to Texas Govt. Code §531.019(g), you may file for judicial review of the decision in the District Court in Travis County within 30 days of the date of this letter.

The nearest legal services office to you is: Lone Star Legal Aid – Paris Office, 164 6th Street SE, Paris, TX, 75460, and telephone number 800-925-5802.

If you have questions about this review, you may call me at (737) 867-7335.

Sincerely,

*Julia Murray*

Julia Murray
Administrative Law Judge

cc: Elizabeth E. Ewing, Attorney-at-Law, Lone Star Legal Aid, Wendy Proctor, Fair and Fraud Hearings Director

# Appendix 2

NO. D-1-GN-22-007315

| | | | |
|---|---|---|---|
| SHANRESSA CRADDOCK | § | IN THE DISTRICT COURT | |
| | § | | |
| V. | § | | |
| | § | 250TH JUDICIAL DISTRICT | |
| TEXAS HEALTH AND | § | | |
| HUMAN SERVICES COMMISSION | § | TRAVIS COUNTY, TEXAS | |

## FINAL ORDER ON ADMINISTRATIVE APPEAL

On November 14, 2024, the Court heard the above-referenced matter. Elizabeth Ewing appeared for Plaintiff, and Mason Currah, Assistant Attorney General, appeared for Defendant.

*Relief Granted*

After careful consideration of the administrative record, the parties' briefs, the applicable law, and argument of counsel, the Court concludes that substantial evidence does not support Defendant's decision to deny replacement SNAP benefits to Plaintiff under the facts of this case; and that Defendant's decision to deny replacement benefits to Plaintiff is contrary to law. *See* Decision Letter dated October 13, 2022.

The Court further concludes that Defendant's policy in Texas Works Handbook § B-341 is outdated, unworkable, and in conflict with law. *See* 7 U.S.C. § 2020(e)(11); 7 C.F.R. § 273.17(a)(1); 7 U.S.C. § 2016(e); 7 C.F.R. § 276.2(b)(7); 7 C.F.R. § 277.18(m)(1); and 1 Tex. Admin. Code § 372.1519); *Skipper v. Duffy*, 703 F. Supp. 697 (ND Ill 1988). Defendant's decision is accordingly, REVERSED.

Defendant is ORDERED to restore Plaintiff's SNAP benefits in the amount of $930.00.

Costs are taxed against Defendant.

**IT IS SO ORDERED**.

SIGNED in Chambers on December 31, 2024.

Appellant's Brief Appendix 005

_____
MADELEINE CONNOR, JUDGE PRESIDING

I, VELVA L. PRICE, District Clerk, Travis County,
Texas, do hereby certify that this is a true and
correct copy as same appears of record in my
office. Witness my hand and seal of office
On 03/05/2025 03:24:46

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

127

# Appendix 3

KeyCite Yellow Flag - Negative Treatment
Proposed Regulation

Code of Federal Regulations
  Title 7. Agriculture
    Subtitle B. Regulations of the Department of Agriculture
      Chapter II. Food and Nutrition Service, Department of Agriculture (Refs & Annos)
        Subchapter C. Supplemental Nutrition Assistance and Food Distribution Program (Refs & Annos)
          Part 274. Issuance and Use of Program Benefits (Refs & Annos)

7 C.F.R. § 274.6

§ 274.6 Replacement issuances and cards to households.

Currentness

(a) Providing replacement issuance.

(1) Subject to the restrictions in paragraph (a)(3) of this section, State agencies shall provide replacement issuances to a household when the household reports that food purchased with Program benefits was destroyed in a household misfortune.

(2) Where a Federal disaster declaration has been issued and the household is eligible for disaster SNAP benefits under the provisions of part 280, the household shall not receive both the disaster allotment and a replacement allotment for a misfortune.

(3) Replacement restrictions.

(i) Replacement issuances shall be provided only if a household timely reports a loss orally or in writing. The report will be considered timely if it is made to the State agency within 10 days of the date food purchased with Program benefits is destroyed in a household misfortune.

(ii) No limit on the number of replacements shall be placed on the replacement of food purchased with Program benefits which was destroyed in a household misfortune.

(iii) Except for households certified under 7 CFR part 280, replacement issuances shall be provided in the amount of the

loss to the household, up to a maximum of one month's allotment, unless the issuance includes restored benefits which shall be replaced up to their full value.

(4) Household statement of loss.

(i) Prior to issuing a replacement, the State agency shall obtain from a member of the household a signed statement attesting to the household's loss. The required statement may be mailed to the State agency if the household member is unable to come into the office because of age, handicap or distance from the office and is unable to appoint an authorized representative.

(ii) If the signed statement or affidavit is not received by the State agency within 10 days of the date of report, no replacement shall be made. If the 10th day falls on a weekend or holiday, and the statement is received the day after the weekend or holiday, the State agency shall consider the statement timely received.

(iii) The statement shall be retained in the case record. It shall attest to the destruction of food purchased with the original issuance and the reason for the replacement. It shall also state that the household is aware of the penalties for intentional misrepresentation of the facts, including but not limited to, a charge of perjury for a false claim.

(5) Time limits for making issuance replacements.

(i) Replacement issuances shall be provided to households within 10 days after report of loss or within two (2) working days of receiving the signed household statement required in paragraph (a)(4) of this section, whichever date is later.

(ii) The State agency shall deny or delay replacement issuances in cases in which available documentation indicates that the household's request for replacement appears to be fraudulent.

(iii) The household shall be informed of its right to a fair hearing to contest the denial or delay of a replacement issuance. Replacements shall not be made while the denial or delay is being appealed.

(6) Verifying issuance and household misfortune.

(i) Upon receiving a request for replacement of an issuance for food destroyed in a household misfortune, the State agency shall determine if the issuance was validly issued. The State agency shall also comply with all applicable provisions in paragraphs (a)(3) through (a)(5)of this section.

Appellant's Brief Appendix 009

(ii) Prior to replacing destroyed food that was purchased with Program benefits, the State agency shall determine that the destruction occurred in a household misfortune or disaster, such as, but not limited to, a fire or flood. This shall be verified through a collateral contact, documentation from a community agency including, but not limited to, the fire department or the Red Cross, or a home visit.

(7) Documentation and reconciliation of replacement issuances.

(i) The State agency shall document in the household's case file each request for replacement, the date, the reason, and whether or not the replacement was provided. This information may be recorded exclusively on the household statement required in paragraph (a)(4) of this section.

(ii) The State agency shall maintain, in readily-identifiable form, a record of the replacements granted to the household, the reason, and the month. The record may be a case action sheet maintained in the case file, notations on the master issuance file, if readily accessible, or a document maintained solely for this purpose.

(iii) When a request for replacement is made late in an issuance month, the replacement will be issued in a month subsequent to the month in which the original benefit was issued. All replacements shall be posted and reconciled to the month of issuance of the replacement and may be posted to the month of issuance of the original benefit, so that all duplicate transactions may be identified.

(b) Providing replacement EBT cards or PINs. The State agency shall make replacement EBT cards available for pick up or place the card in the mail within two business days following notice by the household to the State agency that the card has been lost, stolen or damaged unless the State agency implements a replacement procedure pursuant to paragraph (b)(5) of this section.

(1) The State agency shall ensure that a duplicate account is not established which would permit households to access more than one account in the system.

(2) An immediate hold shall be placed on accounts at the time notice is received from a household regarding the need for card or PIN replacement. The State agency shall implement a reporting system which is continually operative. Once a household reports that their EBT card has been lost or stolen, the State agency shall assume liability for benefits subsequently drawn from the account and replace any lost or stolen benefits to the household. The State agency or its agent shall maintain a record showing the date and time of all reports by households that their card is lost or stolen.

(3) The State agency may impose a replacement fee by reducing the monthly allotment of the household receiving the replacement card; however, the fee may not exceed the cost to replace the card. If the State agency intends to collect the fee by reducing the monthly allotment, it must follow FNS reporting procedures for collecting program income. State agencies currently operating EBT systems must inform FNS of their proposed collection operations. State agencies in the process of developing an EBT system must include the procedure for collection of the fee in their system design document. All plans must specify how the State agency intends to account for card replacement fees and include

Appellant's Brief Appendix 010

identification of the replacement threshold, frequency, and circumstances in which the fee shall be applicable. State agencies may establish good cause policies that provide exception rules for cases where replacement card fees will not be collected.

(4) Replacement card. The State agency shall issue replacement cards and PINs in accordance with § 274.2(f) of this chapter.

(5) State option to withhold replacement card. The State agency may require an individual member of a household to contact the State agency to provide an explanation in cases where the number of requests for card replacements is determined excessive. If they so require, the State agency must establish a threshold for the number of card replacements during a specified period of time to be considered excessive. That threshold shall not be less than four cards requested within 12 months prior to the request, unless the State agency has additional evidence indicating a suspected trafficking violation, as defined at § 271.2 of this chapter. If a trafficking violation is suspected prior to the fourth card request, the State agency shall refer the client for investigation and, if deemed appropriate, may provide a notice to the client, requiring the individual or household to contact the State agency to provide an explanation prior to receiving a subsequent replacement card.

(i) The State agency shall notify the household in writing when it has reached the threshold, indicating that the next request for card replacement will require contact with the State agency to provide an explanation for the requests, before the replacement card will be issued. The State agency shall also notify the household in writing once the threshold has been exceeded that the State agency is withholding the card until contact is made. These notices must:

(A) Be written in clear and simple language;

(B) Meet the language requirements described at § 272.4(b) of this chapter;

(C) Specify the number of cards requested and over what period of time;

(D) Explain that the next request, or the current request if the threshold has been exceeded, requires contact with the State agency before another card is issued;

(E) Provide all applicable information on how contact is to be made in order for the client to comply, such as whom to contact, a telephone number and address;

(F) Include a statement that explains what is considered a misuse or fraudulent use of benefits and the possibility of referral to the fraud investigation unit for suspicious activity.

Appellant's Brief Appendix 011

(ii) Following notification, should another card be requested, the State agency shall require that the household contact the State agency to provide an explanation for the requests. If the client makes contact, the State agency shall make the replacement EBT card available for pick up or place the card in the mail in accordance with § 274.2(f) of this chapter within two business days following household contact with the State agency, regardless of whether or not an explanation was provided.

(A) If a household does not contact the State agency in response to the State agency's notice, the State agency shall not issue a replacement card to the household and the case must be referred for investigation.

(B) The State agency shall educate the client on the proper use of the card if the explanation is deemed appropriate and the State agency shall not require contact upon subsequent requests, unless the pattern of card activity has changed since the initial contact and indicates possible trafficking activity.

(C) The State agency shall refer the individual for investigation in cases where the individual contacts the State agency but refuses to explain the card losses or the explanation provided appears to be indicative of trafficking in accordance with § 271.2 of this chapter. The State agency shall issue a replacement card to any household that makes the required contact so that the household has access to benefits in its EBT account while the investigation is underway and while awaiting a hearing, in accordance with § 273.16(e)(5).

(iii) In all cases, a State agency shall act to protect households containing homeless persons, elderly or disabled members, victims of crimes and other vulnerable persons who may lose EBT cards but are not committing fraud.

(6) Excessive Replacement Card Notice. The State agency shall monitor all client requests for EBT card replacements and send a notice, upon the fourth request in a 12–month period, alerting the household that their account is being monitored for potential, suspicious activity. If another replacement card is subsequently requested and trafficking is suspected, the State agency shall refer that case to the State's fraud investigation unit.

(i) The State agency shall be exempt from sending the Excessive Replacement Card Notice if they have chosen to exercise the option to withhold the replacement card until contact is made with the State agency, in accordance with paragraph (b)(5) of this section, as long as the State agency has chosen to use the minimum threshold, which requires sending the first warning notice on the fourth card replacement request within 12 months. If the State agency chooses to use a threshold higher than the fourth card replacement request, the State agency must send the Excessive Replacement Card Notice on the fourth card request in accordance with this section.

(ii) The State agency shall notify the household in writing upon their fourth card request that their case is being monitored. This notice shall, at a minimum:

(A) Be written in clear and simple language;

Appellant's Brief Appendix 012

(B) Meet the language requirements described at § 272.4(b) of this chapter;

(C) Specify the number of cards requested and over what period of time;

(D) Explain that the transactions of the cardholder's account are being monitored for potential trafficking activity;

(E) Include a statement that explains what is considered a misuse or fraudulent use of benefits and the possibility of referral to the State's fraud investigation unit for suspicious activity.

(F) Provide contact information, including a telephone number, should the household have questions or concerns regarding the notice.

**Credits**

[78 FR 51657, Aug. 21, 2013; 78 FR 79567, Dec. 31, 2013; 79 FR 22767, April 24, 2014]

SOURCE: 75 FR 18381, April 12, 2010; 75 FR 81831, Dec. 29, 2010; 85 FR 52031, Aug. 24, 2020, unless otherwise noted.

AUTHORITY: 7 U.S.C. 2011–2036.

Notes of Decisions (17)

Current through April 21, 2025, 90 FR 16644. Some sections may be more current. See credits for details.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Appellant's Brief Appendix 013

# Appendix 4

KeyCite Yellow Flag - Negative Treatment

Proposed Regulation

Texas Administrative Code

    Title 1. Administration

        Part 15. Texas Health and Human Services Commission

            Chapter 372. Temporary Assistance for Needy Families and Supplemental Nutrition Assistance Programs

                Subchapter F. Benefits

                    Division 1. Benefits in General

1 TAC § 372.1519

§ 372.1519. Reporting and Replacing Lost or Stolen Benefits

Currentness

(a) The Texas Health and Human Services Commission (HHSC) replaces benefits removed without authorization after the household or authorized representative reports a lost or stolen EBT card or compromised personal identification number to the EBT call center.

(b) HHSC does not replace benefits, except as provided in subsection (a) of this section.

**Credits**

**Source:** The provisions of this §372.1519 adopted to be effective September 1, 2009, 34 TexReg 5361.

Current through 50 Tex.Reg. No. 460, dated January 10, 2025, as effective on or before January 24, 2025. Some sections may be more current. See credits for details.

1 TAC § 372.1519, 1 TX ADC § 372.1519

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Appellant's Brief Appendix 015

# Appendix 5

# Code of Federal Regulations - 1984

## 7 CFR s 274.3

TITLE 7—AGRICULTURE

Chapter II—Food and Nutrition Service

Subchapter C—Food Stamp and Food Distribution Program

Part 274—Issuance and Use of Food Coupons

s 274.3 Issuance of coupons through the mail.

**(a) Types of mail issuance systems** The State agency may issue some or all of the coupon allotments through the mail. State agencies shall determine whether to use a regular mail issuance system or a direct coupon mailing system. A regular mail issuance system is one which uses an authorization document as an intermediate step in mail issuance. A direct coupon mailing system is one which does not use an authorization document. The system, controls and forms designed by the State agency to operate a regular or direct coupon mail issuance system must be approved by FNS.

**(b) Mail issuance controls and records** (b)(1) The State agency shall establish and maintain a mail issuance log to record requests for mail issuance and the date and amount of coupons issued.

(b)(2) All operations involving the maintenance of coupon inventory records, assembly of coupon allotments, envelope stuffing, and preparation of envelopes for mailing shall, if at all possible, be performed by at least two persons. If these functions are performed by one person, a second party review shall be made to verify coupon inventory, the reconciliation of the mail issuance log, and the number of mailings prepared. Offices using prestuffing methods must provide for dual accountability during the stuffing and addressing operations and maintain a perpetual coupon inventory control and mail issuance logs.

(b)(3) The State agency shall establish controls which prevent a participant from obtaining coupons through both the mail and over-the-counter issuance systems.

(b)(4) The State agency shall consult with appropriate postal officials concerning the schedule for mailing coupons, the approximate volume and value of the mailings, the type of envelopes to be used, and maintain liaison with postal officials to facilitate prompt, efficient, and safe delivery of coupon mailings to households.

(b)(5) At least first-class mail shall be used in mailing coupon allotments. The coupons shall be mailed in sturdy nonforwarding envelopes or other nonforwarding mailing packages.

(b)(6) In months in which issuance has not been affected by a suspension of allotments, direct mail issuance shall be staggered through the 10th day of the month and may be staggered through the 15th day provided that each household will likely receive its coupons on the same date every month. The State agency shall ensure that coupons are not mailed to concentrations of households with the same ZIP code on the same day. FNS may provide waivers to State agencies that present adequate documentation to indicate that theft from the mail will not represent a significant problem.

(b)(7) In months in which issuance has been suspended under the provisions of § 271.7, direct mail issuance shall be staggered either from the date issuance resumes following the end of the suspension to the last day left in the State agency's normal staggering schedule, or over a five day period beginning the day issuance resumes, whichever is a longer period of time. This requirement shall not apply to State agencies that have received waivers from the requirements of paragraph (b)(6) of this section.

(b)(8) State agencies which rely exclusively on mail issuance shall insure that participants receive allotments on a timely basis and can receive expedited issuance in accordance with § 273.2(i) and § 274.2(g). State agencies must also provide timely replacement issuances either from the mailing center or local facilities. If the State agency cannot provide for expedited issuance through the mail issuance system, the State agency shall insure that it has an alternative issuance system to provide expedited service in accordance with § 273.2(i) and § 274.2(g).

Appellant's Brief Appendix 017

*(c) Coupons lost in the mail prior to receipt.* (c)(1) The State agency shall issue replacement coupons only if the coupons are reported stolen from the mail or lost in the mail in the period of their intended use and the household requesting the replacement has not already been issued two replacements in the previous 5 months. The period of intended use for coupons is the month in which the coupons are issued. For coupons issued after the 25th of the month, the period intended for their use is 20 days from their issuance or the last day of the month following issuance whichever the State agency chooses. Replacements for coupons destroyed after receipt are handled under § 273.11(h)(1). When a household reports the nondelivery of an allotment or partial allotment of coupons issued through the mail the State agency shall:

(c)(1)(i) Determine if the coupons were validly issued, actually mailed, and if sufficient time has elapsed for delivery. Coupons are "in the mail" when deposited with the Postal Service. If a delivery of a partial allotment is reported, the State agency shall determine the value of the coupons not delivered, and that the report of receipt of a partial allotment is corroborated by evidence that the coupon loss was due to damage in the mail before delivery or a discrepancy in the issuance unit's inventory. If the receipt of a partial allotment is due to an error in the issuance unit, the remainder of the allotment shall be issued regardless of the number of times the household has received replacements in the past 5 months.

(c)(1)(ii) Review the mail issuance log for the return of undelivered coupons.

(c)(1)(iii) Prepare and have the participant sign a statement (if the coupons have not been returned) that the coupons will be returned to the State agency if recovered by the household and that the household is aware of the penalties for intentionally misrepresenting the facts. The statement may be mailed in if the participant is unable to come into the office because of age, handicap or distance from the office and is unable to appoint an authorized representative. The statement shall be retained in the casefile.

(c)(1)(iv) Provide the replacement no more than 10 days after the report of nondelivery has been received.

(c)(1)(v) Record the report of nondelivery and the date in the issuance log.

(c)(1)(vi) Take other action warranted by the reported nondelivery.

(c)(2) On at least a monthly basis the State agency shall report all losses to the postal authorities. State agencies shall, in cooperation with the Postal Service, attempt to determine the cause of each nondelivery and take appropriate corrective action. State agencies shall also report to the postal authorities all patterns of losses in particular project areas or neighborhoods.

(c)(3) The State agency may place a household in an alternate issuance system when circumstances exist that indicate that the household may not receive their benefits through the normal issuance system, for example, when a household has history of reported nonreceipt coupons. After two reports by a household of nondelivery of either full or partial allotments in a 6 month period, the State agency shall utilize other issuance methods for that household. These may be reports of nondelivery of an original or a replacement allotment. The State agency shall keep the household on the alternate issuance system for the length of time that the State agency determines to be necessary. The State agency may return the household to the regular issuance system if the State agency finds that the circumstances leading to the loss have changed and the risk of loss has lessened. The placement of a household on an alternate issuance system and the length of time the household remains on this system is not subject to the fair hearing process.

(c)(4) FNS will assume financial liability for coupons lost in the mail except as follows:

(c)(4)(i) In mail issuance reporting areas with $300,000 or more of mail issuance in a quarter, the State agency shall be strictly liable to FNS for the value of all mail issuance losses in excess of 0.75 percent during the 2nd, 3rd, and 4th quarters of fiscal year 1983, and in excess of 0.5 percent per quarter thereafter, of the dollar value of each reporting unit's quarterly mail issuance.

(c)(4)(ii) In mail issuance reporting areas with less than $300,000 of mail issuance in a quarter, the State agency shall be strictly liable to FNS for the value of all mail issuance losses in excess of $2,250 per quarter during the 2nd, 3rd and 4th quarters of fiscal year 1983 and $1,500 per quarter thereafter.

(c)(4)(iii) For the purpose of this section, "mail issuance" means all original coupon issuances distributed through the mail. "Mail loss" means all replacements of mail issuances except for replacements of returned mail issuances.

(c)(4)(iv) The liability shall be computed using data from form FNS–259, *Mail Issuance Loss Report*, or other reporting document agreed to by FNS and the State agency, which is submitted for the quarter for the particular administrative division below the State agency level agreed to by FNS and the State agency as the reporting unit.

(c)(4)(v) Where the State agency reports mail issuance loss data on Statewide losses only, the State agency shall work in

Appellant's Brief Appendix 018

consultation with FNS to identify a particular administrative division below that of the State agency that will permit reporting and computation of mail issuance losses and liability assessment. FNS reserves the right to make the final determination on reporting requirements and on administrative divisions within the State for the purpose of determining and assessing liability for mail issuance losses. FNS also reserves the right to revise such determinations as necessary. Revisions will be communicated to State agencies by FNS. Liability assessment will be based on the revised reporting requirements for the next full fiscal quarter.

*(d) Mail issuance reporting on the food coupon accountability report.* (d)(1) All mail issuance activity, including the value of coupon mail issuance replacements, shall be reported on the form FNS–250, food coupon accountability report.

(d)(2) Original allotments subsequently recovered by the issuance office during the current month shall be returned to inventory and noted on the mail issuance log. The replacement issuance for allotments received during the current month shall not be reported on the form FNS–250. The coupon issuer shall notify the post office of the return of coupon allotments previously reported as lost in the mail.

[Amdt. 132, 43 FR 47927, Oct. 17, 1978, as amended at 45 FR 22882, Apr. 4, 1980; 45 FR 71351, Oct. 28, 1980; Amdt. 146, 46 FR 1428, Jan. 6, 1981; Amdt. 190, 46 FR 50284, Oct. 9, 1981; Amdt. 229, 47 FR 50683, Nov. 9, 1982; Amdt. 237, 47 FR 57669, Dec. 28, 1982; 48 FR 15225, April 8, 1983]

EFFECTIVE DATE NOTE: At 47 FR 57669, Dec. 28, 1982, § 274.3(c)(1) introductory text was amended by replacing the reference to § 273.11(g)(1) (incorrectly cited as (g)(2) ) with a reference to § 273.11(h)(1) (incorrectly cited as (h)(2) ), effective January 27, 1983.

Authority: 91 Stat. 958 (7 U.S.C. 2011–2027).

Source: Amdt. 132, 43 FR 47927, Oct. 17, 1978, unless otherwise noted.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Appellant's Brief Appendix 019

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Victoria Gomez on behalf of Jennifer Cook
Bar No. 789233
victoria.gomez@oag.texas.gov
Envelope ID: 99960687
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: 20250422_appellant brief
Status as of 4/23/2025 8:08 AM CST

Associated Case Party: Texas Health an Human Services Commission

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 4/22/2025 5:01:03 PM | SENT |
| Jennifer Cook | | Jennifer.Cook@oag.texas.gov | 4/22/2025 5:01:03 PM | SENT |

Associated Case Party: Shanressa Craddock

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David Beyleryan | | dbeyleryan@lonestarlegal.org | 4/22/2025 5:01:03 PM | SENT |
| Elizabeth Ewing | | eewing@lonestarlegal.org | 4/22/2025 5:01:03 PM | SENT |